UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

DEL MAR TIC I, LLC and DEL MAR TIC II, LLC,

                    Plaintiffs,

        -against-

THE BANCORP BANK,

                  Defendant

:
:
:
:
:
:
:
:
:
:
:
:

Case No.:  1:23-cv-08999 (JLR)

**ORAL ARGUMENT REQUESTED**

------------------------------------------------------------X

# DEFENDANT THE BANCORP BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

ALLEGATIONS OF THE FAC ................................................................................3

LEGAL STANDARD..............................................................................................8

ARGUMENT ..........................................................................................................9

    I.    THE FAC FAILS TO STATE A CLAIM FOR BREACH OF THE
         IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
         (COUNT III) ...........................................................................................9

         A.    Bancorp did not breach the implied covenant by refusing to agree
              to a 70% reduction in the insurance coverage requirements....................11

         B.    Bancorp did not breach the implied covenant by exercising its
              contractual right to procure force-placed coverage. ...................................15

    II.    THE FAC DOES NOT STATE A CLAIM FOR BREACH OF
         FIDUCIARY DUTY (COUNT II).........................................................18

    III.    THE FAC DOES NOT STATE A CLAIM FOR BREACH OF
         CONTRACT RELATED TO THE ESCROW FUNDS (COUNT IV) ................21

    IV.    THE COURT MUST DISMISS PLAINTIFFS' DECLARATORY
         JUDGMENT CLAIM (COUNT I) BECAUSE IT IS DUPLICATIVE OF
         PLAINTIFFS' DEFICIENT IMPLIED COVENANT CLAIM (COUNT
         III) ......................................................................................................23

    V.    DISMISSAL SHOULD BE WITH PREJUDICE .................................................25

CONCLUSION......................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*35 E. 75th Street Corp. v. Christian Louboutin LLC*,
   No. 154883/2020, 2020 WL 7315470 (N.Y. Sup. Ct. Dec. 9, 2020) ......................................14

*159 MP Corp. v. Redbridge Bedford, LLC*,
   33 N.Y.3d 353 (2019) ......................................................................................................14

*A/R Retail LLC v. Hugo Boss Retail, Inc.*,
   149 N.Y.S.3d 808 (N.Y. Sup. Ct. 2021) .............................................................................14

*A+E Television Networks, LLC v. Wish Factory Inc.*,
   No. 15-CV-1189 (DAB), 2016 WL 8136110 (S.D.N.Y. March 11, 2016) ...........................16

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
   57 F.4th 85 (2d Cir. 2023) ..............................................................................................23

*Ameriprise Captive Ins. Co. v. Audatex N. Am., Inc.*,
   No. 1:22-cv-05964 (JLR), 2023 WL 3738942 (S.D.N.Y. May 30, 2023).............................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................................8

*Bank Leumi Trust Co. of N.Y. v. Block 3102 Corp.*,
   180 A.D.2d 588 (1st Dep't 1992) ......................................................................................18

*Canandaigua Nat'l Bank & Tr. Co. v. Acquest S. Park, LLC*,
   170 A.D.3d 1663 (4th Dep't 2019)....................................................................................13

*Delta Airlines, Inc. v. Bombardier, Inc.*,
   No. 1:20-cv-3025, 2021 WL 1163702 (S.D.N.Y. March 25, 2021), *aff'd* No.
   21-1028, 2021 WL 5492938 (2d Cir. Nov. 23, 2021) .....................................................3, 8, 9

*In re Downtown Athletic Club of New York City, Inc.*,
   No. 98 B 41419, 1998 WL 898226 (Bankr. S.D.N.Y. Dec. 21, 1998) ...................................9

*EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*,
   309 F. Supp. 3d 89 (S.D.N.Y. 2018).................................................................................23

*Fesseha v. TD Waterhouse Inv. Servs., Inc.*,
   305 A.D.2d 268 (1st Dep't 2003) ......................................................................................11

*Gottwald v. Sebert*,
   148 N.Y.S.3d 37 (1st Dep't 2021), *aff'd as modified*, 40 N.Y.3d 240 (2023)........................13

*Griffith-Fenton v. JPMorgan Chase/Chase Home Fin.*,
  No. 15 CV 4108, 2015 WL 10850340 (S.D.N.Y. Nov. 12, 2015) ...................................15, 17

*Hartford Fire Ins. Co. v. Federated Dept. Stores, Inc.*,
  723 F. Supp. 976 (S.D.N.Y. 1989) ........................................................................9, 10, 11, 14

*Hertz Global Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
  530 F. Supp. 3d 447 (S.D.N.Y. 2021)...............................................................................9, 15

*In re Joint E. & S. Dist. Asbestos Litig.*,
  14 F.3d 726 (2d Cir. 1993).....................................................................................................24

*LaCroix v. U.S. Bank, N.A.*,
  Civil No. 11–3236, 2012 WL 2357602 (D. Minn. June 20, 2012), *appeal
  dismissed* No. 12-2701 (8th Cir. Oct. 16, 2012) ...................................................................17

*LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*,
  725 F.3d 184 (2d Cir. 2013)...................................................................................................12

*Manufacturers Hanover Tr. Co. v. Yanakas*,
  7 F.3d 310 (2d Cir. 1993)................................................................................................18, 19

*Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*,
  52 F. Supp. 3d 601, 623-24 (S.D.N.Y. 2014), aff'd sub nom. *Maria Re Ltd. ex
  rel. Varga v. Am. Fam. Mut. Ins. Co.*, 607 F. App'x 123 (2d Cir. 2015) ...............................25

*Mars Advert. Eur. Ltd. v. Young & Rubicam, Inc.*,
  No. 13 Civ. 0401, 2013 WL 1790896 (S.D.N.Y. April 24, 2013)....................................24, 25

*Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*,
  716 F. Supp. 1504 (S.D.N.Y. 1989)................................................................................10, 14

*Miller v. Wells Fargo Bank, N.A.*,
  994 F. Supp. 2d 542 (S.D.N.Y. 2014)....................................................................18, 19, 24

*RBG Management Corp. v. Village Super Market, Inc.*,
  No. 1:22-cv-07996 (JLR), 2023 WL 5976273 (S.D.N.Y. Sept. 14, 2023) ..............................5

*Resol. Tr. Corp. v. Lesal Assocs.*,
  No. 91 CIV. 2025 (MBM), 1992 WL 98843 (S.D.N.Y. May 6, 1992) ...................................13

*Rothstein v. Balboa Ins. Co.*,
  794 F.3d 256 (2d Cir. 2015).............................................................................................5, 20

*Rozsa v. May Davis Grp., Inc.*,
  187 F. Supp. 2d 123 (S.D.N.Y. 2002).............................................................................17, 21

*Salazar v. Nat'l Basketball Ass'n*,
    No. 1:22-cv-07935 (JLR), 2023 WL 5016968 (S.D.N.Y. Aug. 7, 2023) .................................8

*Sofi Classic S.A. de C.V. v. Hurowitz*,
    444 F. Supp. 2d 231 (S.D.N.Y. 2006)......................................................................................23

*In re Solutia, Inc.*,
    Adv. No. 05-01843, 2007 WL 1302609 (Bankr. S.D.N.Y. May 1, 2007)...............................10

*State St. Bank & Tr. Co. v. Inversiones Errazuriz Lim.*,
    374 F.3d 158 (2d Cir. 2004).............................................................................................11, 16

*Surrey Strathmore Corp. v. Dollar Sav. Bank*,
    36 N.Y.2d 173 (1975) ............................................................................................................19

*Suthers v. Amgen, Inc.*,
    441 F. Supp. 2d 478 (S.D.N.Y. 2006).........................................................................11, 12, 16

*Telfair v. First Union Mortg. Corp.*,
    216 F.3d 1333 (11th Cir. 2000) .............................................................................................19

*Thyroff v. Nationwide Mut. Ins. Co.*,
    460 F.3d 400 (2d Cir. 2006)...................................................................................................10

*Williamson v. Citicorp*,
    No. 99 CIV 0575, 2005 WL 2978937 (S.D.N.Y. Nov. 7, 2005), *aff'd sub nom.*
    *Curtis v. Citibank, N.A.*, 204 F. App'x 929 (2d Cir. 2006)....................................................25

*Yucyco, Ltd. v. Republic of Slovenia*,
    No. 96 CIV. 4274, 1999 WL 169530 (S.D.N.Y. Mar. 25, 1999) ...........................................11

## Other Authorities

12 C.F.R.§ 1024.5(b)(2)...............................................................................................................15

12 C.F.R. § 1024.37(h) ................................................................................................................15

12 C.F.R. § 1026.3(a)..................................................................................................................15

Fed. R. Civ. P. 12(b)(6)............................................................................................................1, 8

NYSDFS, *Force-Placed Insurance: What You Need to Know*, available at:
    https://www.dfs.ny.gov/consumers/help_for_homeowners/insurance/force-
    placed_insurance......................................................................................................................20

The Bancorp Bank, N.A. ("Bancorp" or the "Bank") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiffs Del Mar TIC I, LLC's and Del Mar TIC II, LLC's (together, "Plaintiffs") first amended complaint (the "FAC") pursuant to Rule 12(b)(6).

## PRELIMINARY STATEMENT

This dispute arises out of a mortgage loan agreement (the "Loan Agreement") between Plaintiffs and Bancorp, whereby Bancorp agreed to lend up to $46,785,000 to Plaintiffs (the "Loan") to enable Plaintiffs' purchase of the Del Mar Apartments in Houston, Texas (the "Del Mar Property"), which would be used to secure the Loan. To protect the Bank's interest in the collateral, the Loan Agreement contains a standard provision requiring Plaintiffs to maintain property insurance on the Del Mar Property in an amount equal to its full replacement cost.

As an additional measure to protect Bancorp's significant stake in the mortgaged property, the Loan Agreement provides that if Plaintiffs fail to maintain the required property insurance, Bancorp may obtain coverage in Plaintiffs' stead and require Plaintiffs to pay the premiums. This insurance is commonly referred to as "force-placed" or "lender-placed" insurance ("LPI"). LPI has been a standard part of the mortgage lending process since the 1960s. Because it is a "coverage of last resort", it is usually more expensive than a policy that a borrower could obtain for itself.

For the first year of the Loan (from June 2022 to May 2023), Plaintiffs maintained property insurance sufficient to cover the full replacement value of the Del Mar Property. Plaintiffs allegedly shopped around for a policy for 2023-2024, but due to "an unprecedented increase in the frequency and severity of natural disasters", the premiums they were quoted were

three times higher than what they had been paying.  FAC ¶¶ 13-17.  Plaintiffs—not wanting to

pay this added expense—tried to convince Bancorp to reduce the contractually-agreed-upon

coverage requirements *by approximately 70%* so that they could obtain a less expensive

insurance policy.  *Id.* ¶¶ 18-37.  Bancorp, however, was unwilling to waive its bargained-for

contractual rights and assume this significant financial risk—as it would mean that the collateral,

which has a replacement value of $63,040,898, would only be insured up to approximately $17

million, thereby materially altering the parties' risk allocation under the original terms of the

Loan Agreement.  *See* FAC ¶ 23.  Plaintiffs then breached the Loan Agreement and allowed the

property insurance coverage to lapse in June 2023, compelling Bancorp to force place coverage,

as it was permitted to do under Section 8.1.2 of the Loan Agreement.

After Bancorp placed coverage on the Del Mar Property, Plaintiffs could have obtained

their own insurance policy and then demanded that Bancorp cancel the LPI policy.  But Plaintiffs

refused to do so.  Instead, Plaintiffs filed this meritless lawsuit.  Under the guise of the implied

covenant of good faith and fair dealing and a request for a declaratory judgment, Counts I and III

ask the Court to rewrite the clear and unambiguous terms of the Loan Agreement and declare

that:  (1) Plaintiffs are not required "to obtain property insurance up to the total replacement

value", and (2) "have no obligation to pay for the force placed premium for the unreasonable

property insurance unilaterally purchased by Bancorp" after Plaintiffs allowed coverage to lapse.

FAC ¶ 54; *see also* ¶¶ 67-73.  This Court may not modify the clear and unambiguous insurance

provisions agreed upon by these sophisticated parties who were represented by experienced and

competent counsel in negotiating the Loan Agreement.  Section 8.1.2 of the Loan Agreement

expressly permits Bancorp to force place coverage in the event that Plaintiffs allow coverage to

lapse.  The fact that insurance premiums have become more expensive in the past year does not excuse Plaintiffs from their contractual obligation to insure the Del Mar Property at its full replacement cost, and to pay the LPI premiums if they fail to do so.

The remaining claims—Counts II (Breach of Fiduciary Duty) and IV (Breach of Contract)—take issue with Bancorp's use of funds in the Tax and Insurance Subaccount to pay the LPI premiums.  The FAC alleges that Bancorp should have instead fronted the payments itself and then sought reimbursement from Plaintiffs at the default interest rate.  FAC ¶¶ 45-47.  First, Bancorp's use of the funds in the Tax and Insurance Subaccount to pay the LPI premiums put Plaintiffs in a _**better**_ financial position—as they were not charged interest on those amounts.  Second, Section 4.3 of the Loan Agreement explicitly allows Bancorp to use funds in the Tax and Insurance Subaccount to pay insurance premiums on behalf of Plaintiffs.  Finally, Bancorp could not have breached a fiduciary duty to Plaintiffs because it had none—there is generally no fiduciary relationship between a mortgagor and a mortgagee, even with respect to an escrow account.  Accordingly, and as set forth below, the Court must dismiss the FAC with prejudice.

## ALLEGATIONS OF THE FAC

### The Loan Agreement

On June 22, 2022, Plaintiffs and Bancorp entered into the Loan Agreement pursuant to which Bancorp agreed to lend Plaintiffs up to $46,785,000 to enable Plaintiffs' purchase of the Del Mar Property.  FAC ¶¶ 7-9; Ex. A,[1] § 2.1.1.[2]  As set forth in Section 2.1 of the Loan

---

[1] References to "Ex. []" refer to the exhibits attached to the Declaration of Caren Decter, dated December 22, 2023, submitted in support of this Motion.

[2] The Court may consider the Loan Agreement because it is incorporated by reference in the FAC.  *See Delta Airlines, Inc. v. Bombardier, Inc.*, No. 1:20-cv-3025, 2021 WL 1163702, at *10 (S.D.N.Y. March 25, 2021), *aff'd* No. 21-1028, 2021 WL 5492938 (2d Cir. Nov. 23, 2021).

Agreement, $38,625,000 of this amount was in the form of an Initial Advance.  FAC ⁋ 8, Ex. A,
§ 2.1.  Plaintiffs have the right to request Future Advances up to a maximum of $8,160,000.  *Id.*

　　　The Loan was secured by, *inter alia*, the Del Mar Property.  FAC ⁋ 9.  To protect
Bancorp's significant interest in the mortgaged property, the Loan Agreement contains a
provision—standard in mortgage agreements—requiring Plaintiffs to procure and pay for
property insurance coverage on the Del Mar Property in an amount equal to the full replacement
cost.  FAC ⁋ 11; Ex. A, § 8.1.1 (Borrower is obligated at its "sole cost" and "for the mutual
benefit of Borrower and Lender" to "obtain and maintain during the Term" property insurance
"in an amount equal to 100% full replacement cost").  The Loan Agreement requires Plaintiffs to
pay the premiums for all insurance policies as they become due and payable, and to furnish
evidence to Bancorp of the renewal of each of the insurance policies, along with receipts or other
evidence of the payment of the insurance premiums.  Ex. A, § 8.1.2.

　　　As an additional measure to protect Bancorp's interest in the Del Mar Property, the Loan
Agreement provides that if Plaintiffs do not maintain the required property insurance coverage,
Bancorp may procure insurance for the Del Mar Property and charge the cost of that insurance to
Plaintiffs.  Specifically Section 8.1.2 of the Loan Agreement states:

> If Borrower [Plaintiffs] does not furnish such evidence and receipts at least ten
> (10) days prior to the expiration of any expiring Policy, the Lender may, but shall
> not be obligated to, procure such insurance and pay the Insurance Premiums
> therefor, and Borrower shall reimburse Lender for the cost of such Insurance
> Premiums promptly on demand, with interest accruing at the Default Rate.

*Id.*; *see also* FAC ¶¶ 12, 46.  "Default Rate" is defined as "a rate per annum equal to the lesser of
(a) the maximum rate permitted by applicable law, or (b) five percent (5%) above the Interest

Rate, compounded monthly." Ex. A, § 1.1. LPI coverage provisions like this are standard in mortgage agreements. *See Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 259-60 (2d Cir. 2015).

Plaintiffs—sophisticated borrowers, borrowing up to $46 million—were represented by experienced counsel during the negotiation of the Loan Agreement. Plaintiffs engaged two law firms to act as special counsel in connection with the Loan. Both firms issued opinion letters in June 2022 related to the Loan Agreement. *See* Ex. A, § 2.1.2(g). In one of these letters, special counsel examined the Loan Agreement and ancillary documents within the context of New York law, and opined, *inter alia*, that the "Loan Documents to which the Borrowers are a party are the valid and binding obligations of each Borrower, enforceable against such Borrower in accordance with their respective terms." *See* Ex. B.[3]

### In June 2023, Plaintiffs Breach Their Insurance Obligations

For the first year, from June 2022 through May 2023, Plaintiffs obtained property insurance coverage from Landmark American Insurance Company for the full replacement cost with an annual premium of $630,474 (the "Landmark Policy"). FAC ⁋ 13. However, in June 2023, Plaintiffs allowed the Landmark Policy to lapse and did not procure a replacement policy. *Id.* ⁋⁋ 14-15, 38, 41. According to Plaintiffs, prior to the expiration of the Landmark Policy, Plaintiffs worked with "two highly regarded brokers" to identify a new carrier with a policy compliant with the terms of the Loan Agreement. *Id.* ⁋ 15. Plaintiffs allege that due to "drastic changes" in the property insurance market from 2022 to 2023, premiums for property insurance

---

[3] The Court may consider this opinion letter because it is a key ancillary document to the Loan Agreement and is in Plaintiffs' possession. *See RBG Management Corp. v. Village Super Market, Inc.*, No. 1:22-cv-07996 (JLR), 2023 WL 5976273, at *3 (S.D.N.Y. Sept. 14, 2023) (court may consider "documents integral to the complaint" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relief upon in bringing suit.").

at the total replacement cost had become more expensive.  *Id.* ¶ 14.  Plaintiffs obtained quotes for

the full replacement cost with an annual premium of approximately $1.8 million per year—

which was three times the annual cost of the Landmark Policy.  *Id.* ¶ 17.

Rather than purchase a compliant policy, Plaintiffs tried to convince Bancorp to agree to

reduce the insurance requirements under the Loan Agreement so they could purchase a less

expensive policy.  *Id.* ¶ 29.  Specifically, Plaintiffs presented a risk model to Bancorp and

contended, notwithstanding Section 8.1.1 of the Loan Agreement, that they should only be

required to obtain $17,077,922 in property insurance coverage—*i.e.*, $42 million less than the

full replacement cost ($63,040,898).  *Id.* ¶¶ 22-24, 29, 31.  Bancorp declined to take on this

financial risk and "continued to insist" that Plaintiffs fully insure the Del Mar Property, as they

agreed to do under the Loan Agreement.  *Id.* ¶ 31.

**After Plaintiffs Allow Coverage to Lapse, Bancorp Procures Force-Placed Insurance to**
**<u>Protect Its Interest in the Collateral</u>**

On June 23, 2023, after Plaintiffs allowed the Landmark Policy to lapse, Bancorp

informed Plaintiffs that CBRE Loan Services, Inc.—its current Loan servicer—had purchased

LPI to protect Bancorp's interest in the Del Mar Property, effective June 22, 2023.  The LPI

premium for June 22, 2023 to July 31, 2023 was $249,020.39, and the monthly LPI premiums

for August, September, and October 2023 were $192,161.61.  FAC ¶¶ 38, 41, 49.  Bancorp

informed Plaintiffs that the LPI—as is typical in these situations—"only protects the interest of

the lender" and does not name Plaintiffs as a beneficiary of the policy.  *Id.* ¶ 41.

Because there were sufficient funds in the Tax and Insurance Subaccount, Bancorp used

those funds to pay the monthly LPI premiums for the initial period the LPI was in effect, rather

than paying these premiums itself and requiring Plaintiffs to reimburse it at the default interest

rate. *Id.* ⁋ 49, Ex. A, § 8.1.2. This was permissible under Section 4.3 of the Loan Agreement, which provides: "Lender will [] apply funds in the Tax and Insurance Subaccount to payments of Taxes and Insurance Premiums required to be made by Borrower pursuant to … Section 8.1", which includes Section 8.1.2's provision regarding force-placed coverage. Ex. A §§ 4.3, 8.1.2. In fact, Bancorp cannot pursue Plaintiffs for failing "to obtain and maintain the fully paid for [insurance] Policies in accordance with Section 8.1 of the Loan Agreement [if] … funds to pay such amounts are available in the Tax and Insurance Subaccount[.]" *Id.* § 3.1(g).

**The Lawsuit**

Instead of procuring their own compliant insurance policy and demanding that Bancorp cancel the force-placed coverage, Plaintiffs filed the instant lawsuit on September 8, 2023, alleging five causes of action. On October 12, 2023, Bancorp removed this case to the Southern District of New York. ECF No. 1. Bancorp moved to dismiss the original Complaint on November 15, 2023. ECF No. 20. In response to that motion, Plaintiffs filed the FAC against Bancorp, rendering the original Complaint moot. ECF No. 23.

Counts I and III of the FAC ask this Court to rewrite the Loan Agreement to excuse Plaintiffs from their insurance obligations. Specifically, Count I seeks a declaratory judgment that: (1) Plaintiffs have no obligation to pay for the LPI premiums, because they are "unreasonable"; (2) "in light of the uncontrollable and unforeseen changes in the insurance market, it would be impracticable to allow Bancorp to force place coverage at unreasonable premium levels" and/or "to require Plaintiffs to obtain property insurance coverage up to the total replacement value"; and (3) Bancorp has breached the implied covenant of good faith and fair dealing by force placing insurance coverage on the Del Mar Property. FAC ⁋ 54. Count III

similarly alleges that Bancorp breached the implied covenant by force-placing "unreasonable and excessive" insurance coverage on the Del Mar Property. *Id.* ¶ 67.

Counts II and IV concern Bancorp's use of "escrow funds" to pay the LPI premiums. Count II alleges that Bancorp breached its fiduciary duty to Plaintiffs by paying the allegedly "unreasonable and excessive" LPI premiums from Plaintiffs' "Tax subaccount within the Escrow Funds" without Plaintiffs' consent. *Id.* ¶¶ 56-60. Count IV similarly alleges that Bancorp breached the Loan Agreement by using "Escrow Funds" to pay the LPI premiums. *Id.* ¶¶ 78-79.

As set forth below, the Court must dismiss the FAC with prejudice.

## **LEGAL STANDARD**

"To survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Salazar v. Nat'l Basketball Ass'n*, No. 1:22-cv-07935 (JLR), 2023 WL 5016968, *4 (S.D.N.Y. Aug. 7, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The complaint must allege facts "sufficient to allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at *4 (quotations omitted). The complaint must plead actual facts—"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In addition to drawing facts from the complaint itself, "courts may consider the facts from documents attached to the complaint as exhibits and documents incorporated by reference in the complaint, including contracts." *Delta Airlines, Inc.*, 2021 WL 1163702, at *10 (cleaned up).[4] "[W]hen allegations contained within the complaint are contradicted by documents attached to the complaint, the documents control,

---

[4] Per Section 11.6 of the Loan Agreement, New York law governs this dispute. Ex. A § 11.6.

and the Court need not accept the allegations contained within the complaint as true." *Id.*

(quoting *Rozsa v. May Davis Grp., Inc.*, 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002)).  At the

motion to dismiss stage, a court "may dismiss a breach of contract claim for failure to state a

claim if the plain language of the contract contradicts or fails to support the plaintiff's allegations

of breach."  *Hertz Global Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 530 F. Supp.

3d 447, 454 (S.D.N.Y. 2021) (internal quotations omitted).

**ARGUMENT**

I.    **THE FAC FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT III)**

Plaintiffs allege that Bancorp breached the covenant of good faith and fair dealing

implicit in the Loan Agreement by:  (1) refusing to lower the contractually-required property

insurance coverage from approximately $63 million to approximately $17 million; (2) requiring

Plaintiffs to pay "unreasonable and excessive force-placed premium[s]" after Plaintiffs allowed

the property insurance coverage to lapse.  Under the guise of this claim, Plaintiffs ask the Court

to rewrite the Loan Agreement such that Bancorp:  (1) is prohibited from charging Plaintiffs for

force-placed insurance; and (2) must instead agree to reduce the insurance coverage requirements

to 27% of the full replacement cost so that Plaintiffs can obtain their own less expensive

insurance policy.

However, "the implied covenant of good faith and fair dealing does not provide a court

*carte blanche* to rewrite the parties' agreement."  *Hartford Fire Ins. Co. v. Federated Dept.*

*Stores, Inc.*, 723 F. Supp. 976, 991 (S.D.N.Y. 1989); *see also In re Downtown Athletic Club of*

*New York City, Inc.*, No. 98 B 41419, 1998 WL 898226, at *11 (Bankr. S.D.N.Y. Dec. 21, 1998)

(dismissing implied covenant claim and noting, "We will not re-write the Mortgage to condition

9

the timing or circumstances under which 18 West may exercise its rights").  "[T]his covenant only applies where an implied promise is so interwoven into the contract as to be necessary for effectuation of the purposes of the contract."  *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) (internal quotes omitted).  "[A] court [cannot] imply a covenant to supply additional terms for which the parties did not bargain."  *Hartford Fire*, 723 F. Supp. at 991; *see also Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F. Supp. 1504, 1519 (S.D.N.Y. 1989) ("These plaintiffs do not invoke an implied covenant of good faith to protect legitimate, mutually contemplated benefit of the indentures; rather, they seek to have this Court create an additional benefit for which they did not bargain.").  Rather, the implied covenant is a limited, gap-filling cause of action; it "will only aid and further the explicit terms of the agreement."  *In re Solutia, Inc.*, Adv. No. 05-01843, 2007 WL 1302609, at *10 (Bankr. S.D.N.Y. May 1, 2007) (implied covenant does not permit a "court to create contract terms that the parties have not negotiated for.").  Importantly, the implied covenant does not undermine a party's general right to act on its own interests—even if it "may incidentally lessen the other party's anticipated fruits from the contract."  *Thyroff*, 460 F.3d at 407-08.

Here, the prohibitions that Plaintiffs seek to impose are nowhere to be found in the Loan Agreement.  They would plainly create additional terms for which the parties did not bargain, and limit Bancorp's right to "act on its own interests" to protect its interest in the collateral.  Plaintiffs may not use the implied covenant to modify the bargained-for risk allocation under the Loan Agreement in a manner that would force Bancorp to assume risk that it (or any lender, for that matter) would never normally take on in order to protect Plaintiffs' profitability.  Nor does the implied covenant allow Plaintiffs to force Bancorp to renegotiate a contract that is no longer

advantageous to Plaintiffs.  Accordingly, and as set forth below, Plaintiffs' implied covenant claim must be dismissed.

**A.    Bancorp did not breach the implied covenant by refusing to agree to a 70% reduction in the insurance coverage requirements.**

Plaintiffs first allege that Bancorp breached the implied covenant by refusing to accept an approximate 70% reduction in the contractual insurance coverage requirements in light of "unprecedented" premium rate increases.  FAC ¶¶ 23-24, 31-32.  However, Bancorp's insistence that Plaintiffs comply with the insurance requirements set forth in the Loan Agreement does not—and cannot—amount to a breach of the implied covenant; Bancorp is simply abiding by the terms of the Loan Agreement.  *See Hartford Fire Ins. Co.*, 723 F. Supp. at 991 ("The mere exercise of one's contractual rights, without more, cannot constitute a breach of the implied covenant of good faith and fair dealing.") (cleaned up); *Fesseha v. TD Waterhouse Inv. Servs., Inc.*, 305 A.D.2d 268, 268 (1st Dep't 2003) (dismissing implied covenant claim based on customer's allegation that defendant liquidated plaintiff's securities without notice where "the Customer Agreement expressly granted [defendant] the right to liquidate plaintiff's positions when it deemed it necessary for its protection"); *Yucyco, Ltd. v. Republic of Slovenia*, No. 96 CIV. 4274, 1999 WL 169530, at *3 (S.D.N.Y. Mar. 25, 1999) ("An implied "covenant of good faith ... cannot expand contract rights beyond the terms of the contract nor can a party violate that covenant when exercising its rights under the contract.").  "[C]ourts have refused attempts to impose liability on a party that engaged in conduct permitted by a contract, even when such conduct is allegedly unreasonable."  *Suthers v. Amgen, Inc.*, 441 F. Supp. 2d 478, 485 (S.D.N.Y. 2006) (emphasis added); *see also State St. Bank & Tr. Co. v. Inversiones Errazuriz Lim.*, 374 F.3d 158, 170 (2d Cir. 2004) ("Where a contract allows a bank to withhold consent for particular

conduct and sets no express restrictions on the bank's right to do so, the bank is not prohibited from unreasonably or arbitrarily withholding such consent.").

Plaintiffs admit that the Loan Agreement requires them to maintain coverage at the full replacement cost. FAC ¶ 11 ("Plaintiffs agreed to procure and pay for property insurance coverage in an amount equal to full replacement cost."); Ex. A § 8.1.1 (Plaintiffs—"for the mutual benefit of Borrower and Lender"—shall obtain and maintain property insurance "in an amount equal to 100% full replacement cost of the Improvements without deduction for depreciation."). The implied covenant of good faith and fair dealing does not undermine Bancorp's right to act "on its own self-interest" and to insist that the collateral be fully insured—as is required under Section 8.1.1 of the Loan Agreement. *See Suthers*, 441 F. Supp. 2d at 485 ("Plaintiffs have no support for the broad proposition that an entity violates the implied covenant of good faith and fair dealing by acting in its own self-interest consistent with its rights under a contract."); *LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 195-96 (2d Cir. 2013) ("The mere fact of LJL's decision to exercise its contractual right, absent bad faith conduct, cannot be deemed a breach of its duty to deal with Pitcairn in good faith.").

Plaintiffs do not allege that there was anything *per se* unreasonable with this standard insurance requirement; indeed, Plaintiffs insured the Del Mar Property at the full replacement cost for the first year of the Loan. FAC ¶ 13. Moreover, the FAC acknowledges that the complained-of premium increases were due to the "*unprecedented increase in the frequency and severity of natural disasters*." FAC ¶ 14 (emphasis added).

Plaintiffs also do not contend that they were unable to obtain a compliant insurance policy for 2023-24. Plaintiffs admit that they obtained estimates in early 2023 from various

carriers for compliant coverage at the full replacement cost.  *Id.* ¶ 17.  Although Plaintiffs allege

that no carrier was "ready to sign on the dotted line and bind a policy on Bancorp's demanded

terms", Plaintiffs do not allege that they were unwilling to do so.  Indeed, it makes no sense that

a carrier would provide an estimate for a policy that it was unwilling to underwrite.  Instead, per

the FAC, it was Plaintiffs who were unwilling to "sign on the dotted line" because the quoted

rates were too expensive.  *Id.* ¶ 17.

Plaintiffs allege that the implied covenant imposed an obligation on Bancorp to reduce

the insurance requirements in light of "unprecedented" premium rate increases.  *Id.*  ¶¶ 29-37.

However, the parties agreed to a bargained-for risk allocation that requires property insurance to

cover the replacement cost of the Del Mar Property, with Plaintiffs assuming all risk related to

possible insurance rate increases.  The Loan Agreement contains no provision requiring Bancorp

to renegotiate the insurance coverage requirements on terms more favorable to Plaintiffs in light

of post-closing fluctuations in the insurance market.  FAC ¶ 71.  Plaintiffs cannot use the implied

covenant to create such an obligation.  *See Resol. Tr. Corp. v. Lesal Assocs.*, No. 91 CIV. 2025

(MBM), 1992 WL 98843, at *5 (S.D.N.Y. May 6, 1992) ("[T]he implied covenant of good faith

and fair dealing is limited to performance under a contract and does not encompass future

dealings or negotiations between the parties. . . .  [I]t does not obligate the promisor to make

future promises or to renegotiate the contract."); *Gottwald v. Sebert*, 148 N.Y.S.3d 37, 47 (1st

Dep't 2021), *aff'd as modified*, 40 N.Y.3d 240 (2023) ("The implied covenant of good faith and

fair dealing could not impose upon plaintiffs an obligation to renegotiate Kesha's contracts that

is not found in the contracts[.]"); *Canandaigua Nat'l Bank & Tr. Co. v. Acquest S. Park, LLC*,

170 A.D.3d 1663, 1665 (4th Dep't 2019) (no breach of implied covenant for failure to renegotiate lease where contract did not require defendant to renegotiate lease).

"[M]arket changes happen all the time" and "unforeseen economic forces" do not permit the Court to modify a contract signed between two sophisticated parties. *35 E. 75th Street Corp. v. Christian Louboutin LLC*, No. 154883/2020, 2020 WL 7315470, at *2 (N.Y. Sup. Ct. Dec. 9, 2020); *see also Hartford Fire*, 723 F. Supp. at 291 (implied covenant cannot create contract terms that the parties did not bargain for); *Metro. Life*, 716 F. Supp. at 1519 (same). In fact, courts considered this issue extensively during the height of the COVID-19 pandemic. For example, in *A/R Retail LLC v. Hugo Boss Retail, Inc.*, Hugo Boss asked the court to excuse its payment obligations under its commercial lease because the COVID-19 shutdown restrictions frustrated the purpose of that lease. 149 N.Y.S.3d 808, 813 (N.Y. Sup. Ct. 2021). The court refused, holding that "although the adverse economic effects of the pandemic undoubtedly are real and significant, they do not rise to the level of triggering" a right to modify or rescind the parties' contract. *Id.* at 826.

Here too, while the adverse economic effects of changes in the insurance market may have rendered it more expensive for Plaintiffs to insure the property at the full replacement cost, these increased costs do not rise to the level of excusing Plaintiffs' insurance obligations under the Loan Agreement. Plaintiffs are sophisticated borrowers who were represented by experienced counsel during the negotiation the Loan Agreement. It is axiomatic that in "New York, agreements negotiated at arm's length by sophisticated, counseled parties are generally enforced according to their plain language pursuant to our strong public policy favoring freedom of contract." *159 MP Corp. v. Redbridge Bedford, LLC*, 33 N.Y.3d 353, 356 (2019). Plaintiffs

may not enlist this Court's assistance in attempting to rewrite the Loan Agreement with the benefit of hindsight—and force Bancorp to assume the financial risk of the loan collateral being insured at approximately 27% of its replacement cost—because Plaintiffs now deem the coverage requirements disadvantageous. *See Hertz Global Holdings, Inc.*, 530 F. Supp. at 456 (A court "will not rewrite the agreement to relieve a sophisticated contracting party . . . from terms that it later deems disadvantageous.").

### B.    Bancorp did not breach the implied covenant by exercising its contractual right to procure force-placed coverage.

Plaintiffs next allege that Bancorp violated the implied covenant by procuring force-placed insurance coverage that was unreasonably priced and excessive. FAC ¶ 67. But this conclusory allegation also fails to state a violation of the implied covenant. *See Griffith-Fenton v. JPMorgan Chase/Chase Home Fin.*, No. 15 CV 4108, 2015 WL 10850340, at *8 (S.D.N.Y. Nov. 12, 2015) (dismissing contract and implied covenant claims because plaintiff "[failed] to plead any facts plausibly alleging Chase acted unreasonably or inappropriately in purchasing a certain amount of force-placed insurance.").[5] Plaintiffs admit that they allowed the contractually-required insurance coverage to lapse. FAC ¶¶ 13, 17. It is undisputed that Section 8.1.2 of the Loan Agreement expressly permits Bancorp to procure force-placed coverage in the event that Plaintiffs fail to furnish evidence of sufficient insurance coverage. Ex. A § 8.1.2. As explained above, Bancorp's exercise of a right *explicitly provided for* in the contract does not—

---

[5] Plaintiffs also allege that they are unable to determine "whether the insurance costs are bona fide and reasonable under 12 C.F.R. § 1024.37(h)" [("RESPA")]. FAC ⁋ 43. However, RESPA does not apply to "[b]usiness purpose loans" such as the Loan—*i.e.*, "[a]n extension of credit primarily for a business, commercial, or agricultural purpose[.]" 12 C.F.R.§ 1024.5(b)(2); *see also* 12 C.F.R. § 1026.3(a).

and cannot—amount to a breach of the implied covenant, even when such conduct is allegedly unreasonable.  *See Suthers*, 441 F. Supp. 2d at 485; *State St. Bank*, 374 F.3d at 170.

Plaintiffs nonetheless contend that the allegedly "unreasonable and excessive" LPI premiums "destroy Plaintiffs' rights to receive the fruits of the Loan Agreement."  FAC ¶ 67. According to Plaintiffs, "the premiums exceed the total operating income of the Del Mar Apartments, which completely wipes out Plaintiffs' profits from the property that the procured insurance is meant to protect."  *Id.*  However, these hyperbolic allegations cannot save Plaintiffs' deficient claim.  First, the Loan enabled Plaintiffs to purchase the Del Mar Property.  Thus, Plaintiffs have not been deprived of all fruits of the Loan Agreement.  Second, the impact of the LPI premiums on Plaintiffs' profitability for 2023-2024 is irrelevant to whether Plaintiffs must pay for the contractually-required property insurance.  Under the Loan Agreement, Plaintiffs agreed to insure the Del Mar Property at its full replacement cost—assuming the risk that insurance premiums might increase over the Loan's lifetime.  "[A] party is not excused from a contract simply because it becomes more economically difficult to perform."  *A+E Television Networks, LLC v. Wish Factory Inc.*, No. 15-CV-1189 (DAB), 2016 WL 8136110, at *13 (S.D.N.Y. March 11, 2016).  "New York law is clear that financial hardship, even to the point of insolvency, is not a defense to enforcement of a contract"—otherwise the frustration of purpose doctrine could jeopardize all commercial contracts in New York.  *Id.*  Thus, Plaintiffs cannot avoid their contractual obligation to pay the LPI premiums by arguing that they "wipe[] out" their profits from the property.  FAC ⁋ 67.

Finally, Plaintiffs' unsupported, inflammatory "kickback" allegation cannot save this deficient claim.  Plaintiffs vaguely allege that "the unusually round nature of the insurance

premiums, together with Bancorp's unwavering refusal to identify the name of the carrier or any

terms of the policy itself, suggest that Bancorp *may* be benefitting from a kickback from its

insurance servicer that is unascertainable without providing Plaintiffs access to the policy or,

even worse, that Bancorp is collecting force placed premiums while not placing a policy at all."

*Id.* ⁋ 69.  First, Plaintiffs do not even allege that Bancorp actually is benefitting from any

kickback—only that it "may" be.  This speculative, conclusory allegation is insufficient to state a

claim.  *See Griffith-Fenton*, 2015 WL 1085034, at *7-8 (In LPI case, plaintiff's conclusory

kickback allegations did not state a claim where plaintiff "failed to plead any facts" in support);

*see also LaCroix v. U.S. Bank, N.A.*, Civil No. 11–3236, 2012 WL 2357602, at *6 (D. Minn.

June 20, 2012), *appeal dismissed* No. 12-2701 (8th Cir. Oct. 16, 2012) (In LPI case, conclusory

allegations that defendant bank engaged in kickback scheme was "purely speculative and not

sufficient to state a claim for relief").  Moreover, the alleged "support" for this speculative

allegation—*i.e.*, the "unusually round nature of the insurance premiums"—is demonstrably false,

as Plaintiffs well know.  The FAC includes a spreadsheet listing the transaction history on the

Loan from January 1, 2023 through October 27, 2023.  *See id.* ⁋ 49.  The monthly LPI premiums,

which Plaintiffs helpfully highlighted, were $249,020.39 for July, and $192,161.61 for August,

September, and October.  *Id.*  These are hardly "unusually round" numbers.

Second, Plaintiffs' knowingly false allegation that Bancorp may be "collecting force

placed premiums while not placing a policy at all" is arguably sanctionable.  *Id.* ⁋ 69.  Prior to

the filing of the FAC, Bancorp—at Plaintiffs' request—provided Plaintiffs with a letter from the

broker of the LPI policy stating that there was property insurance coverage on the Del Mar

Property from June 22, 2023 to present.  Plaintiffs are apparently willing to say anything—regardless of the truth—to avoid their contractual insurance obligations.

In sum, Plaintiffs had the option to purchase one of the less expensive policies that they were quoted back in May 2023.  FAC ⁋ 17.  But Plaintiffs did not do so, and their decision to breach the Loan Agreement and let the property insurance coverage lapse in June 2023 left Bancorp with significant financial exposure.  As was its contractual right, Bancorp procured LPI to protect its financial interest in the Del Mar Property.  Plaintiffs must pay the LPI premiums, or procure their own policy that complies with the terms of the Loan Agreement.

## II.    THE FAC DOES NOT STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY (COUNT II)

Plaintiffs' breach of fiduciary duty claim also fails.  "The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 556 (S.D.N.Y. 2014).

The basis for Plaintiffs' fiduciary duty claim is as follows: "As an escrow holder, Defendant breached its fiduciary duty to Plaintiffs to properly manage the escrow funds by knowingly paying out the unreasonable and excessive force-placed premiums from Plaintiffs' Escrow account without Plaintiffs' consent."  FAC ⁋ 59.  However, under well-settled New York law, there is generally no fiduciary duty between a mortgagor and a mortgagee, even with respect to an escrow account.  *Bank Leumi Trust Co. of N.Y. v. Block 3102 Corp.*, 180 A.D.2d 588, 589 (1st Dep't 1992) (The "legal relationship between a borrower and a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower or its guarantors."); *Manufacturers Hanover Tr. Co. v. Yanakas*, 7 F.3d

310, 318 (2d Cir. 1993) (same).  Courts have consistently rejected attempts to impose a heightened obligation on the debtor-creditor relationship simply because the lender makes payments from an escrow account on behalf of the borrower.  *See, e.g.*, *Miller*, 994 F. Supp. 2d at 556 ("A fiduciary relationship does not arise simply because the mortgagee makes payments from an escrow account on behalf of the mortgagor.") (internal quotes omitted); *Surrey Strathmore Corp. v. Dollar Sav. Bank*, 36 N.Y.2d 173 (1975) (noting that absent specific language in the contract, no obligation existed on the part of the mortgagee to provide an accounting of the mortgagor's escrow account); *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1340-42 (11th Cir. 2000) (under Georgia law, no fiduciary duty by virtue of escrow account used to pay for force-placed insurance).  Thus, the mere holding of funds in a subaccount to pay taxes and insurance cannot form the basis for a fiduciary relationship.  If that were true, nearly all lender-borrower relationships would be subject to a fiduciary duty.  This is not the law.  *See Manufacturers Hanover*, 7 F.3d at 318; *Miller*, 994 F. Supp. 2d at 556.

Furthermore, the account at issue was not a trust account, and Bancorp was not an escrow agent.  Although the FAC repeatedly refers to the account that was used to pay the force-placed coverage premiums as an "escrow account" (*see, e.g.*, FAC ¶¶ 59, 61, 73), it was instead a Tax and Insurance Subaccount created pursuant to Section 4.3 of the Loan Agreement.  Ex. A § 4.3. This Tax and Insurance Subaccount is not subject to an escrow agreement between Bancorp and Plaintiffs.  To the contrary, Section 4.9 of the Loan Agreement states that "all Subaccounts created pursuant to this Agreement … ___shall not constitute trust funds___ and may be commingled with other monies held by Lender."  *Id.* § 4.9 (emphasis added).  The only "Escrow Agreement" referred to in the Loan Agreement is the Escrow Agreement dated as of June 22, 2022, which

pertains to the deposit of $479,675.50 by Juniper Gulf Freeway, Ltd. with Title Houston

Holdings (as escrow agent) to cover certain repairs to the subject property.[6]  *Id.* at p.7, § 4,4; Ex.

C.  This is entirely separate from the Tax and Insurance Subaccount at issue.

 Thus, Plaintiffs have not plausibly alleged any special relationship between Bancorp and

Plaintiffs apart from the ordinary debtor/creditor relationship.  Contrary to Plaintiffs' allegations,

Bancorp was not required to obtain Plaintiffs' approval of the lender-placed insurance policy.

*See* FAC ¶ 56.  Section 8.1.2 of the Loan Agreement explicitly permits Bancorp to make

unilateral decisions concerning the purchase of LPI in the event Plaintiffs fail to maintain the

required coverage.  While Plaintiffs complain that the LPI premiums are more expensive that the

quotes they received in May 2023, the reality—as regulators and the Second Circuit have

noted—is that LPI (as a coverage of last resort) is generally more expensive than a policy that a

borrower could obtain for itself.  *See, e.g.*, NYSDFS, *Force-Placed Insurance: What You Need

to Know*, available at: https://www.dfs.ny.gov/consumers/help_for_homeowners/insurance/force-

placed_insurance ("Force-placed insurance is usually a lot more expensive than what you can

obtain by shopping for an insurance policy yourself."); *Rothstein*, 794 F.3d at 259-60 ("[L]ender-

placed insurance, or LPI, can be more expensive than ordinary hazard insurance and does not

necessarily cover the borrower's interest in the property.").

 Bancorp also did not need Plaintiffs' consent to use funds from the Tax and Insurance

Subaccount to pay the LPI premiums.  *See* FAC ¶ 56.  As set forth in Section III, the Loan

Agreement permits Bancorp to apply funds from the Tax and Insurance Subaccount "to [make]

---

[6] Plaintiffs purchased the Del Mar Property from Juniper Gulf Freeway, Ltd., which agreed to
escrow this money to cover repairs to certain units damaged by an electrical fire.  *See* Ex. C.

payments of Taxes and Insurance Premiums required to be made by Borrower pursuant to …

Section 8.1." Ex. A § 4.3.  In fact, Bancorp's decision to use the available funds in the Tax and

Insurance Subaccount to pay the LPI premiums arguably left Plaintiffs in a *better* financial

position.  If Bancorp had paid these premiums itself, it would have sought reimbursement from

Plaintiffs at the default interest rate—making the cost to Plaintiffs even greater.  Thus, Plaintiffs

cannot plausibly allege—as they must—that they were damaged by Bancorp's alleged

misconduct.  For all these reasons, the Court must dismiss Plaintiffs' fiduciary duty claim.[7]

## III.    THE FAC DOES NOT STATE A CLAIM FOR BREACH OF CONTRACT RELATED TO THE ESCROW FUNDS (COUNT IV)

Plaintiffs also base their breach of contract claim (Count IV) on Bancorp's allegedly

improper use of the funds in the Tax and Insurance Subaccount to pay the LPI premiums.  *See*

FAC ⁋ 78 ("Defendants breached the Loan Agreement by using Escrow Funds in a manner that

is not authorized under the Loan Agreement.").  According to Plaintiffs, Section 8.1.2 "requires"

Bancorp to pay the LPI premiums itself and then seek reimbursement from Plaintiffs, rather than

apply the available funds in the Tax and Insurance Subaccount.  But that is not what Section

8.1.2 says.  Section 8.1.2 says that Bancorp "*may, but shall not be obligated to* … pay the

Insurance Premiums therefor."  *Id.* § 8.1.2 (emphasis added); *see also* FAC at ⁋⁋ 12, 46.

Pursuant to Section 4.3, to the extent there are available funds in the Tax and Insurance

Subaccount, Bancorp also has the option to apply those funds to "to [make] payments of Taxes

---

[7] Plaintiffs unsupported, speculative allegation that Bancorp may not even using these "escrow funds" for the LPI premiums (FAC ⁋ 58) must be disregarded for the reasons set forth in Section I.  The same is true for Plaintiffs' false allegation that that Bancorp "further breached its duty" by "adding additional principal to the Loan to pay for the unreasonable, unnecessary, and arbitrary insurance coverage", for the reasons set forth in Section III.  FAC ⁋ 60.

and Insurance Premiums required to be made by Borrower pursuant to … Section 8.1", which includes the provision regarding lender-placed coverage. Ex. A §§ 4.3, 8.1.2. Indeed, Bancorp cannot pursue Plaintiffs for failing "to obtain and maintain the fully paid for [insurance] Policies in accordance with Section 8.1 of the Loan Agreement [if] … funds to pay such amounts are available in the Tax and Insurance Subaccount[.]" *Id.* § 3.1(g).[8]

Moreover, as explained in Section II, Plaintiffs' preferred approach—for Bancorp to pay the LPI premiums and then seek reimbursement from Plaintiffs at the default interest rate— would leave Plaintiffs in a much worse financial position due to the interest charges. Thus, Plaintiffs cannot allege, as they must, that they were damaged by Bancorp's use of the funds in the Tax and Insurance Subaccount to pay the LPI premiums. *Ameriprise Captive Ins. Co. v. Audatex N. Am., Inc.*, No. 1:22-cv-05964 (JLR), 2023 WL 3738942, at *4 (S.D.N.Y. May 30, 2023) ("To state a claim for breach of contract under New York law, a party must allege … damages attributable to the breach.").

Finally, the newly-added allegations in the FAC cannot save Plaintiffs' deficient claim. First, while Plaintiffs allege that Bancorp has improperly drawn from the "Escrow Funds *set aside for taxes*" (FAC ⁋ 49), the Loan Agreement does not require the segregation of tax and insurance funds within the Tax and Insurance Subaccount. Regardless, the allegedly "set aside tax funds" that were used to pay the LPI premiums were credited back to Plaintiffs' account in October 2023—*i.e.*, prior to Plaintiffs' filing of the FAC. *See* FAC ⁋ 49 (showing that on October 24, 2023, a payment of $177,242.27 (labeled "Re Tax Escrow Payment") was credited

---

[8] As set forth in Section I, the Court must disregard entirely Plaintiffs' unsupported allegation that Bancorp may not even using these "escrow funds" for the LPI premiums. *See* FAC ⁋ 80.

into the Plaintiffs' Tax and Insurance Subaccount).  Second, Plaintiffs' conclusory allegation that Bancorp added "additional principal to the Loan to pay for the [LPI coverage]" is demonstrably false.  *Id.* ¶ 79.  While the loan principal increased in 2003, these increases were due to Plaintiffs' additional loan advances ($817,735.96 in August and $409,988.28 in September).  *Id.* ¶ 49.  For all these reasons, Count IV must be dismissed.

## IV.  THE COURT MUST DISMISS PLAINTIFFS' DECLARATORY JUDGMENT CLAIM (COUNT I) BECAUSE IT IS DUPLICATIVE OF PLAINTIFFS' DEFICIENT IMPLIED COVENANT CLAIM (COUNT III)

Trial courts have broad discretion to decline declaratory jurisdiction.  *See Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99 (2d Cir. 2023).  Courts routinely dismiss declaratory judgment counts that are duplicative of contract claims because they serve no useful purpose.  *See, e.g.*, *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 100 (S.D.N.Y. 2018) ("Plaintiffs' contract claims will necessarily settle the issues for which the declaratory judgment is sought, meaning that the [declaratory judgment] claim[ ] will serve no useful purpose and will not serve to offer relief from uncertainty."); *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249-50 (S.D.N.Y. 2006) ("Plaintiffs' declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action.  Therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action.") (citation omitted).

Here, Plaintiffs' declaratory judgment claim should be dismissed because it replicates the same issues that will be resolved by Plaintiffs' implied covenant claim (Count III).  Specifically, Plaintiffs first seek a declaration that Bancorp breached the implied covenant by force placing

insurance coverage on the Del Mar Property.  FAC ⁋ 54(b).  This is of course entirely duplicative of Plaintiffs' implied covenant claim.

The same is true for the remainder of Plaintiffs' declaratory judgment claim, which seeks a declaration that:

> (1) In light of the uncontrollable and unforeseen changes in the insurance market, it would be impracticable to allow Bancorp to force place coverage at unreasonable premium levels" (*id.* ⁋ 54(c)) and/or "to require property insurance coverage up to the total replacement value" (*id.* ⁋ 54(d)); and
>
> (2) Plaintiffs are not obligated to pay for the force-placed premiums (*id.* ⁋ 54(a)).

These issues will also be resolved by the implied covenant claim, which alleges that "Defendant's actions related to the unreasonable force placed premium amount to a material breach of the implied covenant … with respect to the Loan Agreement."  *Id.* ⁋ 72.  Because "[a] claim for declaratory judgment interpreting a contract provision does not lie when that provision will necessarily be interpreted during the course of litigation", the Court must dismiss this claim. *Mars Advert. Eur. Ltd. v. Young & Rubicam, Inc.*, No. 13 Civ. 0401, 2013 WL 1790896, at *11 (S.D.N.Y. April 24, 2013); *see also Miller*, 994 F. Supp. 2d at 558 (same).[9]

Finally, Plaintiffs cannot use the declaratory judgment procedural device to ask the Court to rewrite the Loan Agreement.  *Mars Advert.*, 2013 WL 1790896, at *11 (rejecting plaintiff's attempt to use the declaratory judgment claim to excuse its future payment obligations, noting: "The Court is not going to rewrite the parties' contract; it will enforce their contract in

---

[9] In *Miller*, the Court also dismissed the declaratory judgment claim because "[d]eclaratory judgments and injunctions are remedies, not causes of action."  *Id.* at 558; *see also In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("The Declaratory Judgment Act does not expand jurisdiction. Nor does it provide an independent cause of action. Its operation is procedural only—to provide a form of relief previously unavailable.") (internal cites omitted). Dismissal is also appropriate for this reason.

accordance with its terms.").  To the extent Plaintiffs seek a declaration regarding their future insurance obligations, "not only does [it] not serve any useful purpose, it smacks of offering an advisory opinion." *Id.*  Plaintiffs' future insurance obligations will be addressed through the resolution of the implied covenant claim.  *Id.* ("The future obligations of the parties, if any, will be addressed through the remedy awarded at the close of litigation.").

## V.    DISMISSAL SHOULD BE WITH PREJUDICE

In response to Bancorp's motion to dismiss the original complaint, Plaintiffs amended the complaint—asserting only minor, conclusory allegations that fail to cure the deficiencies highlighted in Bancorp's motion.  Worse, the spreadsheet inserted at Paragraph 49 of the FAC directly contradicts the majority of Plaintiffs' new allegations.  Given that Plaintiffs' amended claims fail as a matter of fact and law, dismissal should be with prejudice.  *See Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601, 623–24 (S.D.N.Y. 2014), aff'd sub nom. *Maria Re Ltd. ex rel. Varga v. Am. Fam. Mut. Ins. Co.*, 607 F. App'x 123 (2d Cir. 2015) ("[L]eave to amend, though liberally granted, may properly be denied for … repeated failure to cure deficiencies by amendments previously allowed, … or futility of amendment."); *Williamson v. Citicorp*, No. 99 CIV. 0575, 2005 WL 2978937, at *2 (S.D.N.Y. Nov. 7, 2005), *aff'd sub nom. Curtis v. Citibank, N.A.*, 204 F. App'x 929 (2d Cir. 2006) (dismissing claims with prejudice where the "[p]laintiff has been given sufficient opportunities to state a cause of action, and has failed to do so" and thus "leave to amend would be futile").

## <u>CONCLUSION</u>

For the foregoing reasons, Bancorp respectfully requests that the Court dismiss Plaintiffs' FAC with prejudice, and order such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 22, 2023

FRANKFURT KURNIT KLEIN & SELZ, P.C.


By:___/s/   *Caren Decter*_____
Caren Decter
Regina Gerhardt

28 Liberty Street, 35th Floor
New York, New York 10005
Tel.:  (212) 980-0120
Fax:  (347) 438-2114
cdecter@fkks.com
rgerhardt@fkks.com

*Attorneys for The Bancorp Bank, N.A.*