UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEL MAR TIC I, LLC and DEL MAR TIC II, LLC,

                    Plaintiffs,

        v.

THE BANCORP BANK,

                    Defendant.

Case No. 1:23-CV-08999-JLR

<u>**ORAL ARGUMENT REQUESTED**</u>[1]

# **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

---

[1] To the extent the Court is inclined to hear oral argument on the Motion, Del Mar intends to have a junior attorney take the lion's share of responsibility for the argument. *See* J. Rochon's Individual Rule of Practice in Civil Cases 2.C.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

Factual Background .......................................................................................................... 2

    1.   The Formation of the Loan Agreement ................................................................ 2

    2.   Del Mar's Attempts to Secure Insurance for Its Insurable Interests in the Del Mar
Apartments ........................................................................................................... 3

    3.   Bancorp Force Places Insurance and Withholds the Policy from Del Mar ......... 4

    4.   Procedural History .............................................................................................. 5

Legal Standard ................................................................................................................. 6

Argument .......................................................................................................................... 7

    1.   To avoid converting Bancorp's motion into one for summary judgment, the Court
should not consider the opinion letter attached to the motion. .................................. 7

    2.   The FAC plausibly states a claim for breach of the implied covenant of good faith and
fair dealing (Count III) ............................................................................................. 8

        (a)   In New York, the implied covenant of good faith and fair dealing protects against
arbitrary and irrational exercise of contractual discretion. ...................................... 9

        (b)   The FAC alleges a claim for Bancorp's arbitrary and irrational force-placement
of excessively expensive insurance coverage that has injured Del Mar's rights to receive
of the fruits of the Loan Agreement .......................................................................... 10

        (c)   Bancorp's refusal to provide policy information supports an inference of bad faith
and cannot be a basis to dismiss the First Amended Complaint. .............................. 12

    3.   The FAC plausibly states a claim for breach of fiduciary duty (Count II). ..................... 13

    4.   The FAC plausibly states a claim for breach of contract for use of escrow funds
(Count IV). ................................................................................................................. 14

    5.   Del Mar's Declaratory Judgment Claim is Distinct from Its Implied Covenant and
Breach of Contract Claims and Thus Should Not Be Dismissed (Count I) ................... 16

    6.   Dismissal With Prejudice is Not Warranted ................................................................. 18

Conclusion ........................................................................................................................ 18

# TABLE OF AUTHORITIES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................. 6, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................. 6

*Casey v. Citibank, N.A.*,
915 F.Supp.2d 255 (N.D.N.Y. 2013).................................................................. 11, 13

*Chase Grp. All. LLC v. City of New York Dep't of Fin.*,
620 F.3d 146 (2d Cir. 2010).................................................................................... 7

*City of Rome, N.Y. v. Verizon Commc'ns, Inc.*,
362 F.3d 168 (2d Cir. 2004).................................................................................... 17

*Dalton v. Educ. Testing Serv.*,
87 N.Y.2d 384, 663 N.E.2d 289 (1995)............................................................... 1, 10

*Davis v. Dime Sav. Bank*,
158 A.D.2d 50 (N.Y. App. Div. 3d Dep't 1990) .................................................. 13

*DeBagio v. Metro. Cas. Ins. Co.*,
2017 WL 11682781 (N.D.N.Y. Mar. 31, 2017) .................................................... 16

*Dolan v. Select Portfolio Servicing*,
No. 03-CV-3285(PKC)(AKT), 2016 WL 3512196 ............................................... 13

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016)..................................................................................... 7

*Griffith-Fenton v. JPMorgan Chase/Chase Home Fin.*,
No. 15-CV-4108, 2015 WL 10850340 (S.D.N.Y. Nov. 12, 2015)......................... 12

*In re Schick*,
234 B.R. 337 (S.D.N.Y. Bankr. 1999)................................................................... 14

*InterDigital Commc'ns Corp. v. Nokia Corp.*,
407 F.Supp.2d 522 (S.D.N.Y. 2005)............................................................. 1, 9, 10

*Kwan v. Schlein*,
246 F.R.D. 447 (S.D.N.Y. 2007) ........................................................................... 16

*LaCroix v. U.S. Bank, N.A.*,
No. 11-3236(DSD/JJK), 2012 WL 2357602 (D. Minn. June 2012)................. 12, 13

*LJL 33rd Street Associates, LLC v. Pitcarin Properties, Inc.*,
725 F.3d 184 (2d Cir. 2013).................................................................................... 12

*Maniolos v. United States*,
    741 F.Supp.2d 555 (S.D.N.Y. 2010)...................................................................... 13

*Meyer v. Seidel*,
    ___ F.4th ___, No. 21-2221, 2023 WL 8816145 (2d Cir. Dec. 21, 2023) ................................. 7

*Miller v. Wells Fargo Bank, N.A.*,
    994 F.Supp.2d 542 (S.D.N.Y. 2014)...................................................................... 14

*Moke Realty Corp. v. Whitestone Sav. & Loan Ass'n*,
    370 N.Y.S.2d 377 (Sup. Ct. 1975) ...................................................................... 11

*Morales v. New York Univ.*,
    585 F. Supp. 3d 610 (S.D.N.Y. 2022)...................................................................... 18

*Nakahata v. New York Presbyterian Healthcare Sys., Inc.*,
    723 F.3d 192 (2d Cir. 2013)...................................................................... 8

*Nike, Inc. v. Already, LLC*,
    663 F.3d 89 (2d Cir. 2011)...................................................................... 17

*Pall Corp. v. CleanSpace Modular, LLC*,
    No. 1:23-CV-02082, 2023 WL 7412096 (S.D.N.Y. Nov. 9, 2023)...................................... 7, 8

*Subaru Dist. Corp. v. Subaru of Am., Inc.*,
    425 F.3d 119 (2d Cir. 2005)...................................................................... 7, 15

*Suthers v. Amgen, Inc.*,
    441 F.Supp.2d 478 (S.D.N.Y. 2006)...................................................................... 10

*Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*,
    18-CIV-4201 (LGS), 2019 WL 1368570 (S.D.N.Y. March 26, 2019)...................................... 11

*Thyroff v. Nationwide Mut. Ins. Co.*,
    460 F.3d 400 (2d Cir. 2006)...................................................................... 11

*Travellers Int'l, A.G. v. Trans World Airline, Inc.*,
    41 F.3d 1570 (2d Cir. 1994)...................................................................... 9, 10

*Tucker v. Chase Bank USA, N.A.*,
    399 F.Supp.3d 105 (S.D.N.Y. 2019)...................................................................... 14

Other Authorities

*Restatement (2d) of Contracts* § 205(d)...................................................................... 10

Plaintiffs Del Mar TIC I and Del Mar TIC II ("Del Mar") are not asking this Court to rewrite any provisions their Loan Agreement with The Bancorp Bank ("Bancorp"). Rather, Del Mar invokes the implied covenant of good faith and fair dealing in precisely the "gap-filling" context Bancorp concedes the doctrine is applicable. *See* Mot. at 10 (acknowledging the implied covenant as a "gap filling cause of action" that is used to "aid and further the explicit terms of the agreement") (internal citation omitted). The Loan Agreement indisputably gives Bancorp the discretionary right to force-place insurance coverage; but that right is not unchecked. Under New York law, where contracts afford discretion—such as, the type of coverage, level of coverage, cost of coverage, etc.—there is an implied "promise not to act arbitrarily or irrationally in exercising that discretion." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389, 663 N.E.2d 289 (1995). That is precisely the claim that Del Mar has adequately pleaded before this Court.

The FAC alleges Bancorp force placed the equivalent of a $2.3 million a year insurance policy (almost four times the amount of Del Mar's prior premium and $500,000 higher than anything identified in the marketplace). FAC ¶¶ 13, 17, 39. Bancorp disputes none of these well-pleaded allegations. On top of that, asks the Court to put on blinders and ignore (1) Bancorp's ongoing refusal to share any policy information with Del Mar over the life of the policy; (2) the difference between the insurance Bancorp has repeatedly insisted Del Mar must carry on the property and Bancorp's total insurable interest; (3) Del Mar's continued efforts to place an insurance policy on the Del Mar property; and (4) Bancorp's misuse of the Del Mar's escrow funds to—purportedly—cover the cost of the extreme force-placed coverage. FAC ¶¶ 19-42. All of these allegations support the violation of the implied covenant of good faith. *See InterDigital Commc'ns Corp. v. Nokia Corp.*, 407 F.Supp.2d 522, 536 (S.D.N.Y. 2005) ("Subterfuges and evasions violate

the obligation of good faith in performance even though the actor believes his conduct to be justified.").

For all of these reasons and as set forth herein, Del Mar respectfully requests that the Court denies Bancorp's Motion to Dismiss in its entirety.

## FACTUAL BACKGROUND

### 1. The Formation of the Loan Agreement

Plaintiffs are two limited liability companies that collectively are parties to the Loan Agreement with Bancorp. FAC ¶ 7. Under the agreement, which has a principal of up to $46,785,000 depending on the use of future advances, Del Mar is the Borrower and Bancorp is the Lender. FAC ¶¶ 7-8. Using the funds made available through the Loan Agreement, Del Mar purchased the Del Mar Apartments, which provide affordable, Class C housing to Houston residents. FAC ¶¶ 9-10. Affordable housing units like the Del Mar Apartments typically operate on thin profit margins to continue to house residents. FAC ¶ 10. From the outset, the parties understood that the rents from residents of the Del Mar Apartments to pay the principal of Bancorp's loan back with interest, thus securing a benefit for both parties over the life of the loan. FAC ¶ 9.

At the outset of the Loan Agreement, Del Mar secured an insurance policy with Landmark American Insurance Company ("Landmark") with a total premium of $630,474. FAC ¶¶ 11, 13. This policy compiled with all applicable insurance standards Bancorp required for insurance under the Loan Agreement, including covering the total replacement cost of approximately $63 million for the property. *See* FAC ¶ 11, ECF No. 29, Ex. A, Loan Agreement Section 8.1.1.[2]

---

[2] Plaintiffs agree with Defendant that it is proper to consider the Loan Agreement because it is incorporated by reference in the FAC.

2. **Del Mar's Attempts to Secure Insurance for Its Insurable Interests in the Del Mar Apartments**

Although Del Mar's insurance policy with Landmark was not up for renewal until June, 2023, Del Mar began to become concerned in early 2023 about the potential rise in their insurance premiums for the Del Mar Apartments due to unforeseen and drastic changes in the insurance marketplace. FAC ⁋ 14. Del Mar engaged two insurance brokers, who act as intermediaries between the potential insured and the potential insurer, to try and obtain quotes for policies that complied with the terms of the Loan Agreement from at least thirty-two carriers. FAC ⁋⁋ 15-16. Across all thirty-two carriers, Del Mar obtained only one quote for the all-risk, total replacement cost coverage specified in the Loan Agreement—this quote was approximately $1.8 million for an annual period and *still* did not meet all of the other specifications for insurance policies found in the parties' Loan Agreement.[3] FAC ⁋ 18, ECF No. 29, Ex. A, Loan Agreement Section 8.1.1.

Recognizing that this wildly expensive premium (1) did not fulfill all the requirements of the Loan Agreement, and (2) would eliminate the already thin profit margin on the Del Mar Apartments necessary to continue to pay down the loan, Del Mar attempted to find a solution that would allow both parties to enjoy the fruits of the Loan Agreement without risking their respective interests in the Del Mar Apartments. FAC ⁋⁋ 17-19. As a part of this effort, Del Mar engaged insurance experts to run Catastrophic Risk Assessments to assess the level of financial risk associated with each type of severe event in the hopes of reducing the total coverage limit required for the Del Mar property *in any way* from the $63 million assessed "total replacement value." FAC ⁋⁋ 19-29. These Assessments revealed that the total replacement value exceeded the riskiest ground up loss and gross loss scenario by more than $23 million due to the costs that would be

---

[3] There was also no promise from the carrier that it would actually bind the policy for those limits—it was still in the discussion phase. FAC ⁋ 17.

incurred to rebuild the 1978 property "exactly the same way it was built, including using outdated and costly building methods and materials." FAC ⁋⁋ 22-26. The riskiest model (used to demonstrate the impact of a 10,000-year windstorm event) also demonstrated a loss profile and valuation close to the principal of Bancorp's loan, and thus closely tracks Bancorp's insurable interest in the Del Mar Apartments. FAC ⁋⁋ 8, 26.[4]

Del Mar and their Higginbotham broker, Mitchell Jennings, presented information concerning their efforts to find insurance and the Catastrophic Risk Assessments to Bancorp in attempts to find a mutually acceptable way to insure the Del Mar Apartments. FAC ⁋ 29. During these talks, it was revealed that Bancorp had negotiated similar concessions with other borrowers to lower insurance limits given the unprecedented changes in the insurance marketplace. FAC ⁋ 30. But Bancorp refused to negotiate in good faith with Del Mar. FAC ⁋⁋ 31-32. In fact, Bancorp strung Del Mar along by asking it to propose different coverage combinations for specific events like flooding and tornadoes, but at the end of the day, Bancorp refused to accept any alternatives, despite doing so for borrowers. FAC ⁋⁋ 30-37.

### 3. **Bancorp Force Places Insurance and Withholds the Policy from Del Mar**

After Del Mar spent months trying to find insurance coverage that would protect Bancorp's interest in the loan while also allowing Del Mar to maintain some margin of profit to be able to pay back the loan, the Landmark policy expired. FAC ⁋⁋ 13, 37-38. On June 22, Bancorp force placed unidentified insurance coverage under Section 8.1.2 of the Loan Agreement. FAC ⁋⁋ 12, 38. The Loan Agreement specifies no limits on price or other specifics about the type of coverage,

---

[4] "A mortgagor may insure the mortgaged property in an amount equal to the property's value while a mortgagee's insurable interest is limited to the amount of its secured debt." William H. Locke, Jr. & Marilyn C. Maloney, *Top Ten Insurance Tips for Lenders, Back to Basics: A Discussion of Insurance Requirements in Leases and Loan Documents*, March 2012, https://www.gdhm.com/wp-content/uploads/2016/08/whl-HOUIMAN_124528_2.pdf.

leaving that to Bancorp's discretion. ECF No. 29, Ex. A, Section 8.1.2. Bancorp's original force placed premium of approximately $193,000[5] equates to significantly more per month than the approximately $1.8 million annual quote Del Mar received for the all-risk, total replacement cost coverage specified in the Loan Agreement. FAC ⁋⁋ 17, 39. To pay for this policy, Bancorp has—without permission from Del Mar—taken funds out of the parties' Tax/Insurance Escrow Subaccount, including by moving around funds placed in the tax portion of this account. FAC ⁋⁋ 45-51.

On top of that, Bancorp has conceded that its force placed policy covers a lesser amount—only Bancorp's insurable interest. FAC ⁋ 41. To this day, Bancorp has not produced the insurance policy or *any* coverage information.[6] FAC ⁋ 40. While Bancorp's reasons for keeping this "proprietary" insurance policy information away from Del Mar remain unknown, what is clear is that when presented with at least one policy on the marketplace that, albeit imperfectly, covered all insured interests in the Del Mar Apartments for both parties, Bancorp irrationally chose to ignore the loan agreement and pay more for less—a higher premium that it admits covers only its own insurable interests. FAC ⁋⁋ 40-42.

### 4. <u>Procedural History</u>

To put an end to Defendant's irrational actions and to uncover the details of the still-unknown insurance policy on the Del Mar Property, Del Mar filed the present case in the Supreme Court of New York County on September 8, 2023. *See* ECF No. 1. On October 12, Defendant

---

[5] Although not part of the FAC, in December 2023, Bancorp apparently reduced the forced placed premium to only $43,236.36. This newly developed evidence strongly supports Del Mar's pleaded facts: the over $193,000 premium previously charged was arbitrary and irrational.

[6] After Plaintiffs began the process of seeking emergency relief from this Court, Bancorp produced a one-page letter from its insurance agency—not the carrier—that did not identify the policy number, policy type, coverage limits, carrier, or any information other than the intermediary Bancorp purports to have used to obtain the policy. Despite not providing it to the Court, Defendant argues that this letter, standing alone, proves that there is insurance on the property. Mot. at 17. It does not.

removed the case. ECF No. 1. Defendant filed its first motion to dismiss on November 15, 2023. ECF No. 20. To address both changes to governing law due to the case's removal and to update the allegations underlying the action with new facts learned in the ensuing two and a half months after filing their Complaint, Del Mar filed the First Amended Complaint ("FAC") on November 29, 2023. ECF No. 23. The FAC thus became the operative complaint, making Defendant's first motion to dismiss moot. ECF No. 25.

Del Mar's FAC states four causes of action stemming from the factual allegations contained therein. The first claim for declaratory judgment seeks relief related to the Bancorp's bad faith and unreasonable forced placement of insurance and the impracticability of a requirement for total replacement value of a building of this age in the current insurance market. FAC ¶¶ 52-54.

The second and fourth claims both relate to Bancorp's misuse of the Tax/Insurance Escrow Subaccount. Count Two in the FAC alleges that Bancorp breached its fiduciary duties by using funds within the escrow account to pay for the excessive and unreasonable premiums under the force-placed insurance policy. FAC ¶¶ 55-62. Count Four states a breach of contract claim based upon Defendant's use of escrow funds, including escrow funds that Defendant represented to Del Mar would be used for taxes, to pay for the excessive and unreasonable premiums instead of seeking reimbursement from Del Mar as stated in the parties' Loan Agreement. FAC ¶¶ 75-82.

Finally, Count Three of the FAC alleges a breach of the implied covenant of good faith and fair dealing due to Bancorp's arbitrary and irrational exercise of its discretion to force place insurance by force placing a policy with an excessive premium. FAC ¶¶ 63-74.

## LEGAL STANDARD

At the motion to dismiss stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For these

purposes, a court "constru[es] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chase Grp. All. LLC v. City of New York Dep't of Fin.,* 620 F.3d 146, 150 (2d Cir. 2010) (quotations omitted).

"Determining whether a complaint states a claim is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Pall Corp. v. CleanSpace Modular, LLC,* No. 1:23-CV-02082, 2023 WL 7412096, at *3 (S.D.N.Y. Nov. 9, 2023) (quoting *Iqbal*, 556 U.S. at 679). "Generally," on a motion to dismiss, courts "do not look beyond facts stated on the face of the complaint, ... documents appended to the complaint or incorporated in the complaint by reference, and ... matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quotations omitted). And while courts "are not obliged to accept the allegations of the complaint as to how to construe such documents, [ ] at this procedural stage, [courts] should resolve any contractual ambiguities in favor of the plaintiff." *Subaru Dist. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

## ARGUMENT

1. **To avoid converting Bancorp's motion into one for summary judgment, the Court should not consider the opinion letter attached to the motion.**

As a preliminary matter, Bancorp contends that the Court should consider an opinion letter related to the Loan Agreement because it is "integral" to the complaint and is in Del Mar's possession. Bancorp has not made the required showing. A court may consider documents outside the complaint "of which plaintiffs had knowledge and relied on in bringing suit," but may only do so if the plaintiffs relied "on the terms and effect of a document in drafting the complaint . . . *mere notice or possession is not enough*." *Meyer v. Seidel*, ___ F.4th ___, No. 21-2221, 2023 WL 8816145, at *10 (2d Cir. Dec. 21, 2023) (emphasis in original).

There is nothing that suggests Del Mar relied on the opinion letter in bringing suit. "The complaint itself [does] not refer to or in any way rely on the [opinion letter]." *Id.* Thus, the Court should not consider the contents of the opinion letter so as to avoid "converting the motion to one for summary judgment." *Id.* at *9; *see also Nakahata v. New York Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198 (2d Cir. 2013) (noting that "the conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is strictly enforced and mandatory" (cleaned up)).

## 2. The FAC plausibly states a claim for breach of the implied covenant of good faith and fair dealing (Count III)

In an effort to dismiss Del Mar's claim for breach of the implied covenant of good faith and fair dealing, Bancorp fundamentally misunderstands the gravamen of Del Mar's complaint in two ways.[7] First, Bancorp argues that it did not breach the implied covenant when it refused to agree to a reduction in insurance requirements. *See* Mot. at 11–15. This is not, and has never been, the basis for Del Mar's claim. *See* FAC ¶¶ 63-74 (claim for breach of the implied covenant of good faith and fair dealing based on the "unreasonable force placed premium," relying on the refusal to negotiate as evidence of the bad faith decision to force place at an "unreasonably high and arbitrary rate").

Second, Bancorp argues that Del Mar's claim for breach of the implied covenant of good faith and fair dealing is predicated on the impracticability of the Loan Agreement's insurance

---

[7] Bancorp also makes not-so-veiled sanctions threats about "knowingly false" allegations. Mot. at 17. This is baseless. The inclusion of "unusually round" was a clerical error, remaining from the original draft before the more specific information was provided by Bancorp. And the letter purporting to prove there is insurance coverage proves nothing—it is from a broker (not an insurer) and still identifies no policy, no carrier, no coverage limits, nothing. It is as devoid of critical policy information as everything else Bancorp has shared thus far.

requirements in the current insurance marketplace. Again, this is untrue—Count III says nothing about impracticability. *See* FAC ¶¶ 63-74.

Neither of these strawmen is Del Mar's actual claim. Rather, Del Mar's implied covenant claim arises out of Bancorp's arbitrary and irrational decision to force place coverage at a significantly above-market premium for an insurable interest less than that required under the Loan Agreement. Del Mar does not dispute that Bancorp has a contractual right to force place insurance, and does not ask this Court to rewrite that provision in any way. Instead, to use Bancorp's description of the doctrine, Del Mar's relies on the implied covenant of good faith as a "gap-filling" cause of action grounded in Bancorp's unreasonably and arbitrary force placement of this type of insurance, for this level of premium. Because there is no prescription on price, coverage levels, etc. within the Loan Agreement, it is left to Bancorp's discretion. This is exactly where the implied covenant fits in. And Del Mar has pleaded factual allegations establishing that Bancorp violated that implied covenant with its arbitrary force placement of irrationally expensive coverage.

Bancorp's unwavering commitment to disclose as little as possible about the coverage only reinforces how arbitrary and irrational its actions have been. Neither of these contentions amount to "requiring Bancorp to renegotiate the insurance coverage requirements on terms more favorable to Plaintiffs." Mot. at 13. Because Del Mar's complaint pleads these facts, which on their face show a clear abuse of discretion of Bancorp's contractual ability to force-place insurance coverage, Del Mar has plausibly stated a claim for breach of the implied covenant of good faith and fair dealing.

   (a) <u>*In New York, the implied covenant of good faith and fair dealing protects against arbitrary and irrational exercise of contractual discretion.*</u>

"Under New York law, the implied covenant of good faith and fair dealing inheres in every contract." *Travellers Int'l, A.G. v. Trans World Airline, Inc.*, 41 F.3d 1570, 1575 (2d Cir. 1994).

Accordingly, "neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *InterDigital Commc'ns Corp.*, 407 F.Supp.2d at 536. "Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified." *Id.* (quoting *Restatement (2d) of Contracts* § 205(d)).

"Even when a contract confers decision-making power on a single party, the resulting discretion is nevertheless subject to an obligation that it be exercised in good faith." *Travellers*, 41 F.3d at 1575. "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion" *Dalton*, 87 N.Y.2d at 389. This covenant not to act arbitrarily or irrationally "in aid and furtherance of other terms of the contract" is distinct from imposing an obligation on a party not to act in an allegedly unreasonable manner under their contractual rights, which is generally permissible. *Suthers v. Amgen, Inc.*, 441 F.Supp.2d 478, 485 (S.D.N.Y. 2006) (discussing *Dalton*).

Here, the Loan Agreement affords Bancorp the sole "decision-making power" on the issue of force placed insurance—that makes Bancorp's discretion on that force placement "subject to an obligation that [the discretion] be exercised in good faith." *Travellers*, 41 F.3d at 1575.

(b) *The FAC alleges a claim for Bancorp's arbitrary and irrational force-placement of excessively expensive insurance coverage that has injured Del Mar's rights to receive of the fruits of the Loan Agreement.*

Because of Bancorp's abuse of discretion in exercising its ability to force place coverage under the Loan Agreement, it has removed Del Mar's ability—and, for that matter, Bancorp's ability—to receive the fruits of the Loan Agreement. *See InterDigital Commc'ns Corp.*, 407 F.Supp.2d at 536. Indeed, Bancorp would have no reason to form the Loan Agreement with Del Mar if it did not anticipate Del Mar would be able to repay the loan with interest with the profits received from operating the Del Mar Apartments. FAC ⁋ 9.

10

This is not, as Bancorp describes it, a situation in which Bancorp's "general right to act on its own interests" has only incidentally lessen[ed] [Del Mar's] anticipated fruits from the contract." Mot. at 10 (quoting *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407-08 (2d Cir. 2006)). By force placing an insurance policy that exceeds the operating margin for the Del Mar Apartments, Bancorp's irrational choice to place this policy does more than "incidentally lessen" the fruits of the contract—it completely wipes out the thin profit margin Del Mar expected to maintain on the Del Mar Apartments to pay back the loan. FAC ⁋ 18.

But even more fundamentally, Bancorp has represented to Del Mar that it secured insurance *only for itself* as the named insured, Bancorp may only obtain a policy up to the total principal of the loan—Bancorp simply does not have an insurable interest in the Del Mar Apartments beyond that amount. FAC ⁋ 41. *See also Moke Realty Corp. v. Whitestone Sav. & Loan Ass'n*, 370 N.Y.S.2d 377, 381 (Sup. Ct. 1975), *aff'd* 382 N.Y.S.2d 289 (App. Div. 2d Dep't 1976), *aff'd* 363 N.E.2d 587 (N.Y. 1977) ("The mortgagee's interest is coextensive with the debt it is owed."). This is significantly less coverage than that which Bancorp insisted Del Mar obtain. FAC ⁋ 31. That supports an inference of an arbitrary and irrational exercise of contractual discretion. *See Casey v. Citibank, N.A.*, 915 F.Supp.2d 255, 264 (N.D.N.Y. 2013) (holding plaintiffs stated claim for breach of the implied covenant of good faith and faith dealing when "plaintiffs sufficiently alleged that defendants exhibited bad faith by force-placing unnecessary and excessive flood insurance . . . as an arbitrary or irrational exercise of their discretion to do so").

Bancorp's reliance on cases where there were specifically no allegations of bad faith, such as *LJL 33rd Street*, are unavailing—Del Mar has alleged bad faith in the arbitrary and an irrational force placement. *See Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*, 18-CIV-4201 (LGS), 2019 WL 1368570, at *16 (S.D.N.Y. March 26, 2019) (holding that defendant could not rely on

pronouncement in *LJL 33rd Street* that a defendant's "decision to exercise its contractual right, *absent bad faith conduct*, cannot be deemed a breach of its duty to deal ... in good faith" when plaintiff plausibly alleged bad faith (quoting *LJL 33rd Street Associates, LLC v. Pitcarin Properties, Inc.*, 725 F.3d 184 (2d Cir. 2013))).

At bottom, Bancorp does not address either Del Mar's allegations that Bancorp abused its discretion to force place insurance in the factual circumstances of the case or similar allegations that Bancorp engaged in bad faith conduct in placing and maintaining the force-placed insurance without sharing coverage information with Del Mar *at all* in its motion to dismiss. FAC ¶¶ 31-38, 69-70. This is fatal to Bancorp's effort to dismiss the case. As such, Del Mar has plausibly stated a claim for breach of the implied covenant of good faith and fair dealing.

> (c) *Bancorp's refusal to provide policy information supports an inference of bad faith and cannot be a basis to dismiss the First Amended Complaint.*

Through all of this, one thing remains constant—Bancorp is willing to do anything to avoid sharing any policy information with Del Mar. Del Mar's well-pled allegation that Bancorp has not (1) identified the carrier, (2) identified the policy amounts and limits, (3) provided a policy number, (4) provided policy documentation, (5) provided claims contact information in the event of a loss, (6) provided details on what is, or what is not, covered by the force-placed policy, (7) identified the deductible amounts for different types of loss, or (8) provided any information at all that would allow Del Mar to evaluate the force-placed policy has not changed.[8] FAC ¶ 40. Amazingly,

---

[8] Defendant's citations to cases where borrowers had the policy information for the force-placed insurance coverage are thus inapplicable to the current case, where Defendant has repeatedly refused to provide Plaintiffs with any policy information and surrounding actions suggest it acted in bad faith. *Cf. Griffith-Fenton v. JPMorgan Chase/Chase Home Fin.*, No. 15-CV-4108, 2015 WL 10850340, at *2, *8 (S.D.N.Y. Nov. 12, 2015) (dismissing case where, in contrast to other similar cases that did plead claims of breach of the implied covenant, plaintiff did not plead that defendant acted in bad faith in abusing its discretion to force place insurance and where insurer "issued a letter enclosing the insurance policy" to the borrower upon force placement of the policy); *LaCroix v. U.S. Bank, N.A.*, No. 11-3236(DSD/JJK), 2012 WL 2357602, at *1-2 ,*6 (D. Minn. June 2012), appeal dismissed No. 12-2701 (8th Cir. Oct. 16, 2012)

Bancorp uses this refusal to share basic policy information with Del Mar as a sword to argue that Del Mar's allegations in this regard are conclusory and speculative. Mot. at 17. Bancorp's "trust us" approach to its force-placed policy cannot defeat the allegations in the complaint.

### 3. **The FAC plausibly states a claim for breach of fiduciary duty (Count II).**

Bancorp concedes it used the escrow funds from this subaccount to pay for the excessive force-placed premiums. Mot. at 19-20. But it argues that both of Del Mar's claims related to Bancorp's use of funds from the Tax/Insurance Subaccount should be dismissed because the Loan Agreement does not include the word "escrow" to describe the Subaccount, while ignoring how the terms "escrow credit" and "escrow payment" litter the Tax/Insurance Subaccount balance spreadsheet included in the FAC. *Id.*; FAC ¶ 49. At most, this suggests that it is unclear whether the tax/insurance subaccount is indeed an escrow account and that reasonable minds may disagree on whether it qualifies as an escrow account. This is not a basis for dismissal. *See Maniolos v. United States*, 741 F.Supp.2d 555, 567 (S.D.N.Y. 2010) (describing how "when the language of a contract is ambiguous, its construction presents a question of fact, which of course precludes summary dismissal on a Rule 12(b)(6) motion" (quotations omitted)).

Further, New York law expressly "recognizes a fiduciary duty where specific language in the contract obligates a creditor to make payments out of an escrow account on behalf of the debtor." *Casey*, 915 F.Supp.2d at 265 (citing *Davis v. Dime Sav. Bank*, 158 A.D.2d 50, 52 (N.Y. App. Div. 3d Dep't 1990)). Indeed, several courts have found that breach of fiduciary duty claims should survive a motion to dismiss in like circumstances where plaintiffs have alleged that a lender has used escrow funds to pay for excessive force-placed insurance coverage. *See Casey*, 915

---

(describing how plaintiff received copies of force-placed insurance policies that stated that "THIS INSURANCE WILL NOT PROVIDE AN AMOUNT OF COVERAGE GREATER THAN THE NET AMOUNT YOU OWE ON THE MORTGAGE" before dismissing plaintiff's claims).

F.Supp.2d at 265 (holding plaintiffs had "plausibly alleged that defendants breached [their fiduciary] duty by using the escrow funds to pay premiums for force-placed flood insurance that was unauthorized and excessive"); *Dolan v. Select Portfolio Servicing*, No. 03-CV-3285(PKC)(AKT), 2016 WL 3512196, at *7 (upholding breach of fiduciary duty claim at motion to dismiss stage when because lender "had a fiduciary duty to properly manage [ ] escrow funds, which would encompass a duty not to use these funds to pay for excessive or unnecessary insurance premiums").[9] That is exactly what Del Mar has alleged. Del Mar did not consent to the escrow funds being used to pay for these premiums, and instead reimbursement should have been sought. FAC ¶ 46. This presents a valid claim, and the Court should deny dismissal.

Del Mar does not dispute that the funds within the Tax/Insurance Subaccount "shall not constitute trust funds and may be commingled with other monies held by the Lender." ECF No. 29, Ex. A, Loan Agreement Section 4.9. But New York law separately defines *trust* accounts and *escrow* accounts. *See In re Schick*, 234 B.R. 337, 344-45 (S.D.N.Y. Bankr. 1999) (describing separate tests to determine whether an account is a trust account or escrow account under New York law). And Del Mar's claim has nothing to do with commingling. Instead, Bancorp breached its fiduciary duty to manage the funds in the Tax/Insurance Subaccount by using such funds to pay for the excessive force-placed coverage without any permission to do so.

4. **The FAC plausibly states a claim for breach of contract for use of escrow funds (Count IV).**

---

[9] Defendant's citations to *Miller v. Wells Fargo Bank, N.A.*, 994 F.Supp.2d 542 (S.D.N.Y. 2014), is inapplicable given the parties' agreement. Mot. at 19. In *Miller*, the parties' contract provided only that lender "use the Escrow Funds to pay the Escrow Items," which included hazard insurance, and did not provide a specified procedure for paying for force-placed coverage. *Miller*, 994 F.Supp.2d at 548, 556. Here, the parties' contract requires Bancorp to seek reimbursement for force-placed premiums, not to pay them from escrowed funds. ECF No. 29, Ex. A, Loan Agreement Section 8.1.2.

Once again, Bancorp attempts to utilize a contractual interpretation argument to defeat Del Mar's claims on this motion to dismiss, this time arguing through ambiguous language that the contract gives Bancorp the option to apply escrow funds to the excessive force-placed insurance. Mot. at 21-22. Once again, this is not proper on a motion to dismiss. *See Tucker v. Chase Bank USA, N.A.*, 399 F.Supp.3d 105, 114 (S.D.N.Y. 2019) ("At this point in the proceedings . . . courts must not choose between reasonable interpretations of ambiguous contract provisions." (quotations omitted)). Del Mar has plausibly alleged that the portion of the contract stating that the borrowers "shall reimburse" the lender for force-placed coverage indicates that this reimbursement should come from the borrowers themselves—not their escrow funds. FAC ¶ 46, ECF No. 29, Ex. A, Loan Agreement Section 8.1.2. Such contractual ambiguities must be construed in Del Mar's favor at this stage, and thus cannot provide a reason to dismiss Del Mar's breach of contract claim related to Bancorp's use of the escrow funds. *Subaru Dist. Corp.*, 425 F.3d at 122.

Bancorp's claim that no damages flow from Bancorp's use of the escrow funds to pay for the excessive and unreasonable force-placed premiums does not hold water. Mot. at 22. Plain and simple, Bancorp used Plaintiff's escrow funds to pay for the force-placed premiums—once Bancorp took those funds from the Tax/Insurance Subaccount, they were gone. FAC 75-81. If reimbursement had been sought under the contract's provisions, Del Mar would have had the right to choose how to pay, from what account, or whether to pay at all and instead dispute the fees through litigation in light of the excessiveness and unreasonableness as set forth above. ECF No. 29, Ex. A, Loan Agreement Section 8.1.2. Damages of the amounts deducted from the escrow account are a properly pled basis for damages on this claim.

Additionally, Bancorp's recent claim that its use of funds from the tax subaccount is excused because, after suit was filed, it credited funds to the tax account during the pendency of

this litigation is irrelevant. Mot. at 22-23. Because Bancorp retains access to Del Mar's escrow funds and—without further guidance from the court or pending litigation—has not promised that it will keep tax funds and insurance funds separate in the future or request reimbursement for any force-placed insurance instead of using tax and escrow funds, the apparent self-determined, one-time monetary remedy does not provide Del Mar full relief on this claim. Thus, Bancorp's arguments do not change the fact that Del Mar have sufficiently pled a breach of contract for Bancorp's misuse of the funds in the Tax/Insurance Escrow Subaccount.

5. **Del Mar's Declaratory Judgment Claim is Distinct from Its Implied Covenant and Breach of Contract Claims and Thus Should Not Be Dismissed (Count I)**

Bancorp argues that the declaratory judgment claim should be dismissed "because it replicates the same issues that will be resolved by Plaintiffs' implied covenant claim." Mot. at 23. As to two points of the declaration, this is true. FAC ¶¶ 54(a)-(b). But it does not warrant dismissal. Rather, these points of declaration have been pleaded in the alternative, should Bancorp take the position that Section 11.13 of the Loan Agreement only permits Del Mar to raise these issues in an "action seeking . . . declaratory judgment." ECF No. 29, Ex. A, Loan Agreement Section 11.3. *See Kwan v. Schlein*, 246 F.R.D. 447, 451 (S.D.N.Y. 2007) ("[L]itigants have substantial leeway under Rule 8(e) to plead alternative . . . claims.").

As to FAC paragraphs 54(c) and 54(d), however, the claim is not duplicative, and seeks relief that is distinct from Del Mar's claim for breach of the implied covenant of good faith:

> c. In light of the uncontrollable and unforeseen changes in the insurance market, it would be impracticable to allow Bancorp to force place coverage at unreasonable premium levels;
>
> d. In light of the uncontrollable and unforeseen changes in the insurance market, it would be impracticable to require Plaintiffs to obtain property insurance up to the total replacement value.

FAC ⁋ 54. These declarations serve a useful purpose in clarifying the parties' obligations under the Loan Agreement on a going forward basis. *See DeBagio v. Metro. Cas. Ins. Co.*, 2017 WL 11682781, at *2 (N.D.N.Y. Mar. 31, 2017) (explaining that "declaratory judgment serves to clarify where litigants stand in an ongoing relationship with each other").

Specifically, Del Mar should not have to sit idly by when Bancorp has explicitly accused it of breaching the Loan Agreement. Mot. at 2 ("Plaintiffs then breached the Loan Agreement . . . ."). "One such purpose [of declaratory judgment] is to release potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never." *City of Rome, N.Y. v. Verizon Commc'ns, Inc.,* 362 F.3d 168, 174 n.3 (2d Cir. 2004) (quotations omitted). Del Mar need not wait until Bancorp brings a breach of contract claim to determine the parties' rights under the Loan Agreement. "[T]he threat of future litigation remains relevant in determining whether an actual controversy exists." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 96 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013).

FAC paragraphs 54(c) and 54(d) seek declarations that, in effect, would excuse any alleged breach. *See Sage Realty Corp. v. Jugobanka, D.D.*, No. 95-CIV-0323-RJW, at *2 (S.D.N.Y. July 2, 1997) ("Under New York law, the doctrine of commercial frustration, or frustration of purpose, discharges a party's duties to perform under a contract where an unforeseen event has occurred, which, in the context of the entire transaction, destroys the underlying reasons for performing the contract . . .." (quotations omitted)). FAC ⁋⁋ 9, 30.

This claim is independent of Del Mar's other claims in this suit. Even after Del Mar succeeds in proving Bancorp breached its implied covenant of good faith and fair dealing, that will not answer the question of whether any alleged nonperformance by Del Mar was excused. Thus, the Court should not dismiss the declaratory judgment claim.

17

6. **<u>Dismissal With Prejudice is Not Warranted</u>**

While Del Mar disagrees that dismissal is warranted, Bancorp's contention that amendment would be futile is misplaced. The facts evidencing Bancorp's bad faith conduct continue to unfold:

- Two days before filing their amended motion to dismiss, Bancorp notified Del Mar that the premium for the force placed coverage would be dropping from approximately $193,000 to approximately $50,000. This is evidence of the arbitrary and excessive amount previously charged.

- It was later confirmed that premium amount was approximately only $43,000—over 75% less than what Bancorp was charging Del Mar before this lawsuit was filed.

- Bancorp provided a "loss run letter"—from a broker, not an insurer—that continues to hide the identity of the carrier and the scope of the purported policy, which would identify exactly how much insurance Bancorp had purchased for ~$193,000, and whether it is the same as what they're now purchasing for ~$43,000.

On an almost weekly basis, new information suggests inconsistencies with Bancorp's representations about the policy. In the event the Court finds dismissal to be warranted, this presents good cause to allow a second amendment. *See, e.g.*, *Morales v. New York Univ.*, 585 F. Supp. 3d 610, 613 (S.D.N.Y. 2022) (in deciding whether a plaintiff may have leave to amend its complaint after dismissal, "a court must review whether an amendment adds any new facts, accepted as true, that state a claim for relief that is plausible on its face" (quotations omitted)).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court deny Defendant's motion to dismiss the FAC in its entirety. Should the Court find any of Plaintiffs' claims deficient, Plaintiffs respectfully requests that the Court dismisses such claims without prejudice and allow Plaintiffs leave to amend to cure any such deficiencies in their pleading.

Dated: January 8, 2024

By:    /s/ *Jason S. McManis*
Jason S. McManis (*admitted pro hac vice*)
Texas Bar No. 24088032
Angela M. Peterson (*admitted pro hac vice*)

Texas Bar No. 24137111
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney, Suite 2500
Houston, Texas 77010
T: 713-655-1101
F: 713-655-0062
jmcmanis@azalaw.com
apeterson@azalaw.com

Russell M. Yankwitt
Jonathan Ohring
**YANKWITT LLP**
140 Grand Street, Suite 705
White Plains, New York 10601
Tel: (914) 686-1500
Fax: (914) 487-5000
russell@yankwitt.com
jonathan@yankwitt.com

*Attorneys for Plaintiffs*

19

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served the within and foregoing Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss by CM/ECF upon all counsel of record.

Dated: January 8, 2024

By:     /s/ *Jason S. McManis*
Jason S. McManis (*pro hac vice*)
Texas Bar No. 24088032
Angela M. Peterson (*pro hac vice*)
Texas Bar No. 24137111
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney, Suite 2500
Houston, Texas 77010
T: 713-655-1101
F: 713-655-0062
jmcmanis@azalaw.com
apeterson@azalaw.com

Russell M. Yankwitt
Jonathan Ohring
**YANKWITT LLP**
140 Grand Street, Suite 705
White Plains, New York 10601
Tel: (914) 686-1500
Fax: (914) 487-5000
russell@yankwitt.com
jonathan@yankwitt.com