UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

DEL MAR TIC I, LLC and DEL MAR TIC II,    :
LLC,       :   Case No.:  1:23-cv-08999 (JLR)
      :
          Plaintiffs,   :  <u>ORAL ARGUMENT REQUESTED</u>
      :
   -against-     :
      :
THE BANCORP BANK,     :
      :
      Defendant   :

----------------------------------------------------------X

**DEFENDANT THE BANCORP BANK, N.A.'S REPLY MEMORANDUM OF LAW**
<u>**IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE FAC**</u>

FRANKFURT KURNIT KLEIN & SELZ, P.C.
Caren Decter
Regina Gerhardt
28 Liberty Street, 35th Floor
New York, New York 10005
Tel.:  (212) 980-0120
Fax:  (347) 438-2114
cdecter@fkks.com
rgerhardt@fkks.com

*Attorneys for The Bancorp Bank, N.A.*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.    THE FAC DOES NOT STATE A CLAIM FOR BREACH OF THE IMPLIED
      COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT III) ......................... 2

II.   THE FAC DOES NOT STATE A CLAIM FOR BREACH OF FIDUCIARY
      DUTY (COUNT II) ...................................................................................................... 5

III.  THE COMPLAINT DOES NOT STATE A CLAIM FOR BREACH OF
      CONTRACT RELATED TO THE ESCROW FUNDS (COUNT IV) ............................. 7

IV.   THE COURT MUST DISMISS THE DECLARATORY JUDGMENT CLAIM
      (COUNT I) .................................................................................................................. 9

V.    DISMISSAL SHOULD BE WITH PREJUDICE ........................................................... 10

CONCLUSION .......................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A+E Television Networks, LLC v. Wish Factory Inc.*,
No. 15-CV-1189, 2016 WL 8136110 (S.D.N.Y. March 11, 2016) ........................................2

*Bank Leumi Trust Co. of N.Y. v. Block 3102 Corp.*,
180 A.D.2d 588 (1st Dep't 1992) ........................................5

*Casey v. Citibank, N.A.*,
915 F. Supp. 2d 255 (N.D.N.Y. 2013) ........................................5, 6

*Cent. Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.*,
848 S.W.2d 232 (Tex. App. 1992) ........................................5

*Childress v. Liberty Mut. Fire Ins. Co.*,
No. C10-059, 2011 WL 887975 (W.D. Wash. Mar. 11, 2011) ........................................4

*Circeo-Loudon v. Green Tree Servicing, LLC*,
No. 14-cv-21384, 2014 WL 4219587 (S.D. Fla. Aug. 25, 2014) ........................................8

*Dolan v. Select Portfolio Servicing*,
No. 03-cv-3285, 2016 WL 3512196 (E.D.N.Y. June 22, 2016) ........................................5, 6

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
837 F. Supp. 2d 162 (S.D.N.Y. 2011) ........................................6

*Feaz v. Wells Fargo Bank, N.A.*,
745 F.3d 1098 (11th Cir. 2014) ........................................5

*Frein v. Pelosi*,
No. 22-1063, 2023 WL 2530453 (2d Cir. Mar. 16, 2023) ........................................10

*Griffith-Fenton v. Coldwell Banker Mortg.*,
No. 13 CV 7449, 2014 WL 2217805, at *1, 7 (S.D.N.Y. May 2, 2014) ........................................5, 6

*Griffith-Fenton v. JPMorgan Chase/Chase Home Fin.*,
No. 15 CV 4108, 2015 WL 10850340 (S.D.N.Y. Nov. 12, 2015) ........................................2

*In re Joint E. & S. Dist. Asbestos Litig.*,
14 F.3d 726 (2d Cir. 1993) ........................................9

*Manufacturers Hanover Tr. Co. v. Yanakas*,
7 F.3d 310 (2d Cir. 1993) ........................................5, 6

*Mars Advert. Eur. Ltd. v. Young & Rubicam, Inc.*,
    No. 13 Civ. 0401, 2013 WL 1790896 (S.D.N.Y. April 24, 2013)..........................................10

*Rothstein v. Balboa Ins. Co.*,
    794 F.3d 256 (2d Cir. 2015)............................................................................................4

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir.2013)..............................................................................................3

*Woodside v. Pac. Union Fin., LLC*,
    No. CV 17-12191, 2018 WL 1419349 (E.D. La. Mar. 22, 2018)............................................3

## Other Authorities

NYSDFS, *Force-Placed Insurance: What You Need to Know*, available at:
    https://www.dfs.ny.gov/consumers/help_for_homeowners/insurance/force-
    placed_insurance..............................................................................................................4

## PRELIMINARY STATEMENT

The First Amended Complaint ("FAC") fails to cure the deficiencies highlighted in Bancorp's motion to dismiss the original complaint ("Mot."). As set forth in Bancorp's moving papers, the majority of the "new" allegations added by Plaintiffs are not just conclusory—they are demonstrably false. Plaintiffs' Opposition ("Opp.") does not dispute this. Rather, Plaintiffs' response is to abandon them and fall back on the deficient allegations in their original complaint. For example, the FAC repeats the following false allegation in Counts II, III, and IV: "[T]he unusually round nature of the insurance premiums … suggest[s] that Bancorp may be benefitting from a kickback from its insurance servicer[.]" FAC ¶ 58. Bancorp's moving papers explained that *a spreadsheet that Plaintiffs added to the FAC* lists the monthly LPI premium at $249,020.39 for July, and $192,161.61 for August, September, and October. These are hardly "unusually round" numbers. Plaintiffs' response is to confess in a footnote that the "inclusion of 'unusually round' was a clerical error." Opp. at 8 n.7.

Plaintiffs are essentially left with their bald allegation that the LPI premiums are "unnecessary and excessive"—a claim repeated throughout the FAC without any factual support. However, this conclusory allegation is insufficient to state a claim. To the extent Plaintiffs prefer to have a property insurance policy that is less expensive and provides better protection, there is a simple remedy—Plaintiffs can procure a policy that complies with the Loan Agreement, as they are contractually required to do. Until then, Plaintiffs must pay the premiums for the LPI policy, which Bancorp was forced to purchase per Section 8.1.2 of the Loan Agreement after Plaintiffs allowed coverage to lapse.

In sum, despite having had two opportunities, Plaintiffs have not adequately pleaded any viable claims related to Bancorp's placement of the LPI policy. As set forth below and in Bancorp's moving papers, the Court should dismiss the FAC with prejudice.

## ARGUMENT

### I.    THE FAC DOES NOT STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT III)

Plaintiffs' Opposition confirms that Plaintiffs' chief complaint with the LPI policy is that the premium "completely wipes out the thin profit margin Del Mar expected to maintain on the Del Mar Apartments[.]" Opp. at 11.  However, as set forth in Bancorp's moving papers, this cannot state a claim for breach of the implied covenant.  Mot. at 16-17.  Under the Loan Agreement, Plaintiffs agreed to insure the Del Mar Property at its full replacement cost—assuming the risk that insurance premiums might increase over the Loan's lifetime.  The impact of the LPI premiums on Plaintiffs' profitability for 2023-2024 is irrelevant to whether Plaintiffs must pay for contractually-required property insurance.  "[A] party is not excused from a contract simply because it becomes more economically difficult to perform." *A+E Television Networks, LLC v. Wish Factory Inc.*, No. 15-CV-1189, 2016 WL 8136110, at *13 (S.D.N.Y. March 11, 2016).  "New York law is clear that financial hardship, even to the point of insolvency, is not a defense to enforcement of a contract"—otherwise the frustration of purpose doctrine could jeopardize all commercial contracts in New York.  *Id.*  Thus, Plaintiffs cannot avoid their contractual obligation to pay the LPI premiums by arguing that they "wipe[] out" their profits from the property.  FAC ¶ 67.  Bancorp is not obligated to ensure that Plaintiffs' real estate investment is profitable.

Nor can Plaintiffs survive dismissal by baldly asserting that the LPI premiums are "significantly above-market" or "irrationally expensive."  Opp. at 9.  Such conclusory allegations are insufficient to state a claim.  *See Griffith-Fenton v. JPMorgan Chase/Chase Home Fin.*, No. 15 CV 4108, 2015 WL 10850340, at *8 (S.D.N.Y. Nov. 12, 2015) (dismissing contract claim because while "Plaintiff accuse[d] Chase of requiring borrowers to pay for insurance coverage

that exceeded the coverage necessary to protect the mortgagee's interest in the secured property

… plaintiff fail[ed] to plead any facts plausibly alleging Chase acted unreasonably or

inappropriately in purchasing a certain amount of force-placed insurance." (cleaned up));

*Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir.2013) ("In addressing the sufficiency of a

complaint we accept as true all factual allegations and draw from them all reasonable inferences;

but we are not required to credit conclusory allegations or legal conclusions couched as factual

allegations.").  Moreover, as another court aptly noted:

> [I]t is not the lender's obligation to price shop for competitive insurance policies.
> It is the borrower's obligation and responsibility to obtain insurance, and to seek a
> price-competitive option. But when they fail to take those steps, the lender does
> not act in bad faith for not investing the time and resources to secure the best deal
> for the borrower. *See Cohen*, 735 F.3d at 612 (holding that the implied duty of
> good faith does not require parties to "be reasonable," but to avoid invoking a
> contractual provision "dishonestly to achieve a purpose contract to that for which
> the contract had been made" and finding that the lender did not violate this duty
> when it gave the borrower notices of the LPI and that she could cancel at any time
> by securing her own insurance.)

*Woodside v. Pac. Union Fin., LLC*, No. CV 17-12191, 2018 WL 1419349, at *5 (E.D. La. Mar.

22, 2018).  While Plaintiffs attempt to blame the high LPI premium costs on some unspecified,

nefarious conduct, they actually admit that property insurance premiums "dramatically increased

in 2023 due to an unprecedented increase in the frequency and severity of natural disasters",

along with an "inflationary environment."  FAC ⁋ 14.  The mere fact the LPI premiums are more

expensive than what Plaintiffs paid prior to these "drastic changes in the property insurance

market" (*id.*) is hardly surprising and cannot establish an implied covenant claim.

In apparent recognition of these deficiencies, Plaintiffs' Opposition adds an argument that

Bancorp breached the implied covenant by securing "insurance *only for itself* as the named

insured[.]"  Opp. at 11.  However, there is nothing unlawful about this—it is well-recognized by

courts and regulators that LPI coverage is an insurance of last resort that generally only protects

the interests of the lender, not the property owner. *Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 260-61 (2d Cir. 2015); *see also* NYSDFS, *Force-Placed Insurance: What You Need to Know*, available at: https://www.dfs.ny.gov/consumers/help_for_homeowners/insurance/force-placed_insurance (explaining that force-placed insurance allows "the lender to protect its financial interest in the property."). Plaintiffs point to no legal or contractual duty requiring Bancorp to name Plaintiffs as additional insureds under the LPI policy. *See Childress v. Liberty Mut. Fire Ins. Co.*, No. C10-059, 2011 WL 887975, at *2 (W.D. Wash. Mar. 11, 2011) ("Plaintiffs' arguments that BAC should have named them as additional insureds [under the LPI policy] … are untethered to any legal duty and unsupported by any authority.").

Finally, Bancorp's alleged "refusal" to provide certain LPI policy information to Plaintiffs is irrelevant to the viability of the implied covenant claim. Plaintiffs cite no contractual or other duty requiring Bancorp to provide this LPI policy information. Moreover, Plaintiffs nowhere explain how the allegedly "withheld" LPI policy information (*e.g.*, the carrier name, the policy number, the policy amounts and limits, etc.) would change the result of this motion.

In sum, the Loan Agreement indisputably requires Plaintiffs to maintain property insurance on the loan collateral. The Loan Agreement also contains a standard mortgage provision permitting Bancorp to force-place coverage in the event Plaintiffs fail to maintain this required coverage. Plaintiffs' unilateral decision to let the property insurance coverage lapse in June 2023 left Bancorp with significant financial exposure. As was its contractual right, Bancorp procured an LPI policy to protect its financial interest in the loan collateral. Bancorp's exercise of a right *explicitly provided for* in the contract does not—and cannot—amount to a breach of the implied covenant. *See* Mot. at 11, 15-16. Plaintiffs must pay the LPI premiums, or procure their own policy that complies with the terms of the Loan Agreement.

## II.    THE FAC DOES NOT STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY (COUNT II)

Plaintiffs admit that there is generally no fiduciary duty between a mortgagor and a mortgagee.  *Bank Leumi Trust Co. of N.Y. v. Block 3102 Corp.*, 180 A.D.2d 588, 589 (1st Dep't 1992); *Manufacturers Hanover Tr. Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993).  Plaintiffs' Opposition nonetheless argues that the fiduciary duty claim should proceed because two courts outside the Southern District have allowed a fiduciary duty claim to survive based on the allegation that defendants used escrow funds to pay excessive LPI premiums.  *See* Opp. at 13-14 (citing *Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255 (N.D.N.Y. 2013) and *Dolan v. Select Portfolio Servicing*, No. 03-cv-3285, 2016 WL 3512196 (E.D.N.Y. June 22, 2016)).

However, the Southern District has held the opposite.  In *Miller v. Wells Fargo Bank, N.A.*, the court rejected a borrower's attempt to impose a heightened obligation on the debtor-creditor relationship simply because the lender made payments from an escrow account on behalf of the borrower.  994 F. Supp. 2d 542, 556 (S.D.N.Y. 2014) ("A fiduciary relationship does not arise simply because the mortgagee makes payments from an escrow account on behalf of the mortgagor.") (internal quotes omitted).  Likewise, in *Griffith-Fenton v. Coldwell Banker Mortg.*, the court found no fiduciary relationship between a mortgagor and borrower—notwithstanding borrower's allegation that mortgagor purchased an unnecessary lender-placed insurance policy "from plaintiff's escrow account without her knowledge."  No. 13 CV 7449, 2014 WL 2217805, at *1, 7 (S.D.N.Y. May 2, 2014) (cleaned up).[1]  Thus, under *Miller* and

---

[1] The law of other states is in accord.  *See, e.g., Cent. Sav. & Loan Ass'n v. Stemmons Nw. Bank, N.A.*, 848 S.W.2d 232, 243 (Tex. App. 1992) ("The payment of funds by the mortgagor into an "escrow" account for the mortgagee's use to meet tax and insurance obligations upon the property as they accrue does not create a trust or fiduciary relationship."); *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1110 (11th Cir. 2014) ("Feaz alleges that Wells Fargo's use of escrow funds to pay for the force-placed insurance breached fiduciary duties, but this assumes,

*Griffith-Fenton*, Bancorp's mere holding of funds in a subaccount to pay taxes and insurance cannot create a fiduciary relationship. If that were true, nearly all lender-borrower relationships would be subject to a fiduciary duty. This is not the law. *See Manufacturers Hanover*, 7 F.3d at 318; *Miller*, 994 F. Supp. 2d at 556.

Additionally, *Casey* and *Dolan* are distinguishable on their facts. First, the *Casey* ruling was premised on there being "specific provisions" in the mortgage requiring defendants to hold certain funds "in escrow." *Casey*, 915 F. Supp. 2d at 265. Here, Plaintiffs do not point to any provision in the Loan Agreement requiring Bancorp to hold insurance funds "in escrow", and the Tax and Insurance Subaccount is not subject to an escrow agreement. Second, *Casey* and *Dolan*, held that plaintiffs had plausibly alleged that defendants received kickbacks from the force-placed insurance. *Casey*, 915 F. Supp. 2d at 264; *Dolan*, 2016 WL 3512196, at *7 n. 16. Here, Plaintiffs' Opposition abandons the speculative allegation that Bancorp *may* be benefitting from a kickback from its LPI servicer—presumably because the basis for this allegation (the "unusually round nature of the [LPI] premiums") is demonstrably false. Opp. at 8 n.7.

Thus, Plaintiffs have not plausibly alleged a fiduciary relationship between Bancorp and Plaintiffs. But even if they had, Bancorp's use of funds in the Tax and Insurance Subaccount to pay the LPI premiums would not constitute a breach of fiduciary duty.[2] First, this claim cannot stand because it is duplicative of Plaintiffs' contract claim. *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 193 (S.D.N.Y. 2011) ("Under New York

_____

without a legal basis, that a lender's administration of such 'escrow funds' creates a fiduciary relationship.").

[2] While the FAC also alleges that Bancorp "breached its duty by … adding additional principal to the Loan to pay for the [LPI premiums]", the chart displayed at Paragraph 49 of the FAC establishes that this is not true. *See* Mot. at 23. Plaintiffs' Opposition does not dispute this.

law, a cause of action for breach of fiduciary duty that is merely duplicative of a breach of contract claim cannot stand.") (internal quotes omitted).  Second, limiting Bancorp's ability to use funds from the Tax and Insurance Subaccount to pay the LPI premiums would be at odds with the express terms of the Loan Agreement that permit Bancorp to use available funds in the Tax and Insurance Subaccount "to [make] payments of Taxes and Insurance Premiums required to be made by Borrower pursuant to … Section 8.1", which includes the provision regarding lender-placed coverage.  Ex. A §§ 4.3, 8.1.2.  Accordingly, Count II must be dismissed.

## III.    THE COMPLAINT DOES NOT STATE A CLAIM FOR BREACH OF CONTRACT RELATED TO THE ESCROW FUNDS (COUNT IV)

Plaintiffs' Opposition abandons some of the FAC's most outrageously false allegations—namely, that Bancorp breached the Loan Agreement by: (1) "adding additional principal to the Loan to pay for the [LPI premiums]", and (2) using "Escrow Funds" to pay premiums for an LPI policy that Bancorp *may* be receiving kickbacks from, or that does not exist.[3]  FAC ¶¶ 79-80.  Plaintiffs' Opposition instead limits the contract claim to Bancorp's mere use of "escrow funds" in the Tax and Insurance Subaccount to pay the LPI premiums.  Opp. at 15.  According to Plaintiffs, Section 8.1.2 "requires" Bancorp to pay the LPI premiums itself and then seek reimbursement from Plaintiffs, rather than apply the available funds in the Tax and Insurance Subaccount.  But that is not what Section 8.1.2 says.  Section 8.1.2 says that Bancorp "*may, but shall not be obligated to* … pay the Insurance Premiums therefor."  *Id.* § 8.1.2 (emphasis added); *see also* FAC ¶¶ 12, 46.  Pursuant to Section 4.3, to the extent there are available funds in the Tax and Insurance Subaccount, Bancorp also has the option to apply those funds to "to [make]

---

[3] Additionally, as to Plaintiffs' allegation that Bancorp breached the Loan Agreement by using funds from Plaintiffs' "Tax subaccount" to pay the LPI premiums, Plaintiffs' Opposition admits that Plaintiffs suffered no damages from this because Bancorp subsequently credited such funds back to Plaintiffs.  Opp. at 15-16.

payments of Taxes and Insurance Premiums required to be made by Borrower pursuant to …

Section 8.1", which includes the provision regarding lender-placed coverage.  Ex. A §§ 4.3,

8.1.2.  Plaintiffs cannot save their deficient contract claim by attempting to manufacture a

requirement or ambiguity in the Loan Agreement that does not actually exist.

 Moreover, as explained in Bancorp's moving papers, Plaintiffs' preferred approach—for

Bancorp to pay the LPI premiums and then seek reimbursement from Plaintiffs at the default

interest rate—would leave Plaintiffs in a much worse financial position due to the interest

charges.  Mot. at 21-22.  Thus, Plaintiffs cannot allege, as they must, that they were damaged by

Bancorp's use of the funds in the Tax and Insurance Subaccount to pay the LPI premiums.  In

response, Plaintiffs contend that they can nonetheless establish damages because Bancorp's use

of the funds in the Tax and Insurance Subaccount to pay the LPI premiums deprived Plaintiffs of

their "right to choose … whether to pay [the LPI premiums] at all and instead dispute the fees

through litigation[.]"  Opp. at 15.  However, losing an opportunity to breach the Loan Agreement

by refusing to pay the LPI premiums is not a cognizable damages theory.  *See Circeo-Loudon v.*

*Green Tree Servicing, LLC*, No. 14-cv-21384, 2014 WL 4219587, at *3 (S.D. Fla. Aug. 25,

2014) ("Drawn to a logical conclusion, Plaintiffs' theory of damages amounts to a claim that if

they knew the charges were kickbacks, they would have breached a contractual duty to pay.

Losing an opportunity to breach a contract cannot constitute a cognizable fraud harm.").  Also,

Count IV does not contend that Bancorp's placement of the LPI policy breached the express

terms of the Loan Agreement and excused Plaintiffs of their payment obligations.  Instead,

Plaintiffs' contract claim is that Bancorp breached Section 8.1.2 of the Loan Agreement by using

funds in the Tax and Insurance Subaccount to pay the LPI premiums, rather than fronting the

money and seeking reimbursement from Plaintiffs.  In light of the interest charges, Plaintiffs

simply cannot show that they are in a worse position from Bancorp having done so.  For all these reasons, Count IV must be dismissed.

## IV.    THE COURT MUST DISMISS THE DECLARATORY JUDGMENT CLAIM (COUNT I)

Bancorp's moving papers established that Count I should be dismissed because the four points raised by Plaintiffs' declaratory judgment claim will be resolved by the implied covenant claim (Count III).  Mot. at 23-24.  Plaintiffs' Opposition does not dispute that points (a) and (b) are entirely duplicative of the implied covenant claim.  Opp. at 16.  Plaintiffs nonetheless assert that dismissal is inappropriate because "these points of declaration have been pleaded in the alternative, should Bancorp take the position that Section 11.13 of the Loan Agreement only permits Del Mar to raise issues in an 'action seeking … declaratory judgment."  *Id.*  But this argument is a red herring.  The Court will either dismiss the implied covenant claim, or let it proceed—in which case Plaintiffs can seek declaratory or injunctive relief as a remedy.  But the standalone, duplicative declaratory judgment claim must be dismissed.  *See Miller*, 994 F. Supp. 2d at 558 (dismissing declaratory judgment claim because "[d]eclaratory judgments and injunctions are remedies, not causes of action."); *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993).

Plaintiffs' Opposition disputes that points (c) and (d) sought by the declaratory judgment claim are duplicative of the implied covenant claim—arguing that the relief sought is "distinct."  Opp. at 16.  Plaintiffs are wrong, for the reasons set forth in Bancorp's moving papers.  *See* Mot. at 23-24.  Regardless, the alleged "distinct relief" sought by points (c) and (d)—*i.e.*, for the Court to rewrite the Loan Agreement to excuse Plaintiffs from having to maintain the contractually-required insurance, and to abolish Bancorp's contractual right to force-place coverage, in light of "uncontrollable and unforeseen change in the insurance market (*see* FAC ¶ 54(c)-(d))—is not a

permissible use of the declaratory judgment device. *See Mars Advert. Eur. Ltd. v. Young & Rubicam, Inc.*, No. 13 Civ. 0401, 2013 WL 1790896, at *11 (S.D.N.Y. April 24, 2013) (rejecting plaintiff's attempt to use the declaratory judgment claim to excuse its future payment obligations, noting: "The Court is not going to rewrite the parties' contract; it will enforce their contract in accordance with its terms."). Under the Loan Agreement, Plaintiffs assumed the risk of unforeseen changes in the insurance market and related premium increases. Plaintiffs cannot use the declaratory judgment device to modify this bargained-for risk allocation. Therefore, Count I must be dismissed.

## V.    DISMISSAL SHOULD BE WITH PREJUDICE

Because Plaintiffs' claims fail as a matter of law, dismissal should be with prejudice. Plaintiffs contend that they should be afforded a third bite at the apple because "[t]he facts evidencing Bancorp's bad faith conduct continue to unfold." Opp. at 18. However, the only allegedly "bad-faith conduct" that Plaintiffs point to is the recent *decrease* in LPI premiums. *See* Opp. at 18. Plaintiffs presumably seek the opportunity to add this allegation to a second amended complaint. However, this premium decrease has no impact on the viability of Plaintiffs' claims. The fact that the monthly LPI premiums are higher during Hurricane Season (*i.e.*, June 1 through November 30 for Atlantic-based storms) than in December or January is hardly surprising and does not save Plaintiffs' deficient claims. Thus, because Plaintiffs' Opposition suggests "no new material to cure identified substantive issues" with the FAC, leave to amend would be futile and dismissal should be with prejudice. *See Frein v. Pelosi*, No. 22-1063, 2023 WL 2530453, at *2 (2d Cir. Mar. 16, 2023).

## <u>CONCLUSION</u>

For the foregoing reasons, and those set forth in Bancorp's moving papers, Plaintiffs' FAC should be dismissed with prejudice.

Dated:  New York, New York
            January 19, 2024

                                    FRANKFURT KURNIT KLEIN & SELZ, P.C.


                                    By:    */s/ Caren Decter*
                                            Caren Decter
                                            Regina Gerhardt

                                    28 Liberty Street, 35th Floor
                                    New York, New York 10005
                                    Tel.:  (212) 980-0120
                                    Fax:  (347) 438-2114
                                    cdecter@fkks.com
                                    rgerhardt@fkks.com

                                    *Attorneys for The Bancorp Bank, N.A.*