UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEL MAR TIC I, LLC and DEL MAR TIC II, LLC,

Plaintiffs,

-against-

THE BANCORP BANK,

Defendant.

Case No. 1:23-cv-08999 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

This case centers on force-placed insurance coverage pursuant to a loan agreement between Del Mar TIC I, LLC and Del Mar TIC II, LLC (together, "Plaintiffs") and the Bancorp Bank ("Defendant"). ECF No. 23 ("Am. Compl." or the "Amended Complaint"). Plaintiffs allege that Defendant took unfair advantage of the commercial terms of the parties' agreement to shift costs of such insurance coverage to the Plaintiffs and frustrate the purpose of their original agreement. *Id.* Defendant now moves to dismiss the Amended Complaint. ECF No. 30 ("Br."). For the following reasons, Defendant's motion is GRANTED.

## BACKGROUND[1]

### I.  Factual Background

#### A.  The Loan Agreement

On June 22, 2022, Plaintiffs entered into a loan agreement with Defendant. Am. Compl. ¶ 7; ECF Nos. 29-1 and 29-2 (together, the "Loan Agreement"). Pursuant to Section

---

[1] Unless otherwise noted, the facts stated herein are taken from the Amended Complaint and accepted as true for the purposes of resolving Defendant's motion to dismiss. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010). As Plaintiffs acknowledge (ECF No. 31 at 2 n.2), the Court may also consider the parties' loan agreement, which is the subject of the instant dispute and was incorporated by reference in the Amended Complaint. *See Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016) ("The Court may also consider any written instrument attached to the complaint" and "statements or documents incorporated into the complaint by reference." (quotation marks and citation omitted)); *Div. 1181 Amalgamated*

2.1 of the Loan Agreement, Defendant made a loan to Plaintiffs (the "Loan") in the maximum amount of $46,785,000.  Loan Agreement § 2.1.1.  The Loan would be disbursed in an initial advance amount of $38,625,000, and the Plaintiffs had the right to request future advances up to the total remaining amount of $8,160,000.  *Id.* §§ 2.1.1, 2.1.2.

The "fundamental purpose" of the Loan Agreement was to provide financing for Plaintiffs to purchase the Del Mar Apartments in Houston, Texas and Plaintiffs used that property and its rental proceeds to secure the Loan.  Am. Compl. ¶ 9.  "The Del Mar Apartments provide affordable, Class C housing to Houston residents" and "accept applications from 'second chance' renters who may be unable to secure alternative housing due to poor credit history, evictions, and other problems that traditionally may prevent a renter's application from being approved."  *Id.* ¶ 10.  Plaintiffs' business "operates on a thin profit margin to ensure the property's ability to remain afloat and continued ability to house its residents."  *Id.*

Section 8.1.1 of the Loan Agreement ("Section 8.1.1") provides that Plaintiffs, "at [their] sole cost, for the mutual benefit of [Plaintiffs] and [Defendant], shall obtain and maintain" several insurance policies, including (as relevant here) "all-risk" property insurance "in an amount equal to 100% full replacement cost."  In turn, Section 8.1.2 of the Loan Agreement ("Section 8.1.2") provides that if Plaintiffs fail to furnish the insurance coverage required in Section 8.1.1, Defendant "may, but shall not be obligated to, procure

---

*Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam) ("When ruling on a motion to dismiss, documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." (quotation marks and citation omitted)).

such insurance and pay the Insurance Premiums thereof, and [Plaintiffs] shall reimburse [Defendant] for the cost of such Insurance Premiums promptly on demand."

Section 4.3 of the Loan Agreement ("Section 4.3"), entitled "Taxes and Insurance," provides that Plaintiffs shall transfer sufficient funds for regularly scheduled tax and insurance payments to a subaccount (the "Tax and Insurance Subaccount") and that "[Defendant] will . . . apply funds in the Tax and Insurance Subaccount to payments of Taxes and Insurance Premiums required to be made by [Plaintiffs] pursuant to . . . Section 8.1."

**B. Previous Insurance Coverage**

For the first year of the Loan, from June 2022 through May 2023, Plaintiffs obtained property coverage, as required by the Loan Agreement, from Landmark American Insurance Company for a total annual premium of $630,474 (the "Landmark Policy").  Am. Compl. ¶ 13.  However, according to Plaintiffs, "[f]rom 2022 to 2023, there were drastic changes in the property insurance market.  In addition to the current inflationary environment, reinsurance rates for property insurance carriers dramatically increased at the beginning of 2023 due to an unprecedented increase in the frequency and severity of natural disasters."  *Id.* ¶ 14.  "As a result, the insurance market became highly illiquid and very few carriers, if any, were willing to provide all-risk property insurance at total replacement cost value at the levels contemplated by the Loan Agreement."  *Id.*

In early 2023, "Plaintiffs made extensive efforts to identify a new carrier with a policy compliant with the terms of the Loan Agreement."  *Id.* ¶ 15; *see id.* ¶ 16.  Despite these efforts, the estimates that Plaintiffs received were approximately three times the cost of the Landmark Policy (that is, a premium of approximately $1,800,000 per year for coverage).  *Id.* ¶ 17.  According to Plaintiffs, such an expensive insurance premium "would have frustrated the purpose of the Loan Agreement" because it would "eliminate any profit margin on the Del

Mar property, and thus no money would be available to pay down the [L]oan itself." *Id.* ¶ 18. Indeed, "[a]t the quoted rate, Plaintiffs' operating costs and debt servicing expenses exceed their revenue from the Del Mar Apartments." *Id.*

### C. Plaintiffs Seek Lower Coverage Limits

Plaintiffs then "began engaging with insurance experts to identify the actual risk" of loss, in an effort to address the issue of the expensive insurance premiums. *Id.* ¶¶ 19-21. In 2023, "the total insurable value of the Del Mar property" was $63,040,898, "considerably higher than [the] principal of the [L]oan . . . due to the age of the property." *Id.* ¶ 22. Because total replacement cost insurance (as required by Section 8.1.1) "values the insurable interest of a property at the level of what it would cost to rebuild the property exactly the same way it was built, including using outdated and costly building methods and materials . . . , it would be much cheaper to rebuild the property using modern building methods and materials should such construction be necessary." *Id.* (emphasis omitted). According to Plaintiffs' various models, a "coverage policy for full replacement cost actually exceeds the expected risk on an annual basis" by between approximately $23,000,000 and $46,000,000. *Id.* ¶¶ 23-28.

Armed with this information, Plaintiffs sought to convince Defendant to reduce the insurance requirements under the Loan Agreement. *Id.* ¶ 29. Plaintiffs were also aware that Defendant had made concessions on insurance limits to other borrowers due to the recent shift in the insurance market. *Id.* ¶ 30. Nevertheless, Defendant insisted that Plaintiffs insure the Del Mar property up to the full replacement value. *Id.* ¶ 31. Further, despite confirming that flooding was Defendant's main concern with the property, Defendant refused to reduce the insurance requirements under the Loan Agreement even if Plaintiffs carried separate flood insurance. *Id.* ¶ 35. Defendant also refused Plaintiffs' offer to obtain separate tornado

coverage on the property in order to reduce the insurance requirements under the Loan Agreement. *Id.* ¶ 36.

### D. Defendant Force-Places Coverage

Given that Plaintiffs no longer held the contractually required property insurance coverage as of June 2023, on June 23, 2023, Defendant force-placed insurance coverage on the Del Mar property. *Id.* ¶ 38. The lender-placed insurance ("LPI") policy carried a premium of $250,000 for the period from June 22, 2023 to July 31, 2023, and $193,000 per month thereafter, for an annual premium of greater than $2,300,000. *Id.* ¶¶ 38-39.

Despite requests from Plaintiffs to do so, Defendant has not identified the policy carrier, the policy amounts and limits, the policy number, policy documentation, contact information in the event of a loss, the scope of the insurance coverage, the deductible amount for different types of loss, or otherwise provided "any information at all that would allow Plaintiffs to evaluate the force-placed policy." *Id.* ¶ 40. Defendant also informed Plaintiffs that the force-placed coverage protects the interest of the lender and "may not equal the replacement cost of the property." *Id.* ¶ 41. Plaintiffs assert that the cost of the LPI policy "calls into question" whether Defendant and its agents are "receiving some type of kickback for the policy arrangement." *Id.* ¶ 42.

Finally, rather than paying the premiums of the LPI policy directly and requesting reimbursement from Plaintiff, Defendant has been deducting the premium payments from the Tax and Insurance Escrow Account. *Id.* ¶¶ 45-49.

### II. Procedural History

Plaintiffs commenced this action in New York state court on September 8, 2023. *See* ECF No. 1-1. Defendant removed the case to this Court on October 12, 2023. *See* ECF No. 1. Defendant filed a motion to dismiss the complaint on November 15, 2023. ECF

No. 20.  Plaintiffs amended their complaint in response on November 29, 2023.  Am. Compl.

The Court denied Defendant's first motion to dismiss the complaint as moot.  ECF No 27.

Defendant then filed the instant motion to dismiss the Amended Complaint on December 22,

2023.  Br.  Plaintiffs opposed the motion on January 8, 2024, ECF No. 31 ("Opp."), and

Defendant replied in support of its motion on January 19, 2024, ECF No. 32 ("Reply").  The

Court stayed discovery pending resolution of the motion to dismiss, *see Del Mar TIC I, LLC*

*v. Bancorp Bank*, No. 23-cv-08999 (JLR), 2024 WL 1348501 (S.D.N.Y. Mar. 29, 2024), and

held oral argument on the motion on May 9, 2024, ECF No. 38.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule")

12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court accepts as true all

non-conclusory allegations of fact and draws all reasonable inferences in the plaintiff's favor.

*Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc).  But a court

need not "accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 555).  A complaint must allege "more than a sheer

possibility that a defendant has acted unlawfully" and more than "facts that are 'merely

consistent with' a defendant's liability."  *Id.* (quoting *Twombly*, 550 U.S. at 557).  "[T]he

court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of

the evidence that might be offered on either side."  *Lynch v. City of New York*, 952 F.3d 67, 75

(2d Cir. 2020).  Determining whether a complaint states a claim is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*,

556 U.S. at 679.

## DISCUSSION[2]

Plaintiffs bring causes of action against Defendant for: (1) declaratory judgment (Count I); (2) breach of fiduciary duty (Count II); (3) breach of the implied covenant of good faith and fair dealing (Count III); and (4) breach of contract (Count IV).  Am. Compl. ¶¶ 52-82.  Defendant asserts that each cause of action should be dismissed.  Br.  The Court analyzes each cause of action, although in a different order than brought in the Amended Complaint.

### I.   Implied Covenant of Good Faith and Fair Dealing

Plaintiffs do not dispute that Defendant has the contractual right to force-place the insurance coverage.  Opp. at 9.  Plaintiffs instead claim a breach of the implied covenant of good faith and fair dealing, alleging that Defendant acted arbitrarily and irrationally in exercising its discretion to force-place an excessive LPI policy with expensive premiums, without sharing coverage information with Plaintiffs, and when it was willing to negotiate with other borrowers on coverage requirements.  Am. Compl. ¶¶ 67-68, 70-72; Opp. at 9, 12.[3]

Defendant argues that Plaintiffs fail to state a claim for violation of the implied covenant because Section 8.1.2 of the Loan Agreement expressly permitted Defendant to

---

[2] The parties agree, and confirmed during oral argument, that New York law applies to the interpretation of the Loan Agreement.  *See* Am. Compl. ¶ 66 (Plaintiffs asserting that "New York law governs the Loan Agreement"); Br. at 8 n.4 (Defendant asserting that "New York law governs this dispute").  This shared assumption suffices to establish choice of law.  *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 239 n.4 (2d Cir. 1999) ("The parties agree that New York law governs this action, and we therefore apply it."); *Allison v. Rite Aid Corp.*, 812 F. Supp. 2d 565, 568 (S.D.N.Y. 2011) ("Because the parties have relied on New York State law in presenting their arguments to this Court, we assume that New York law applies.").

[3] In support of their implied-covenant claim, Plaintiffs also alleged that "the unusually round nature of the insurance premiums . . . suggest[s] that [Defendant] may be benefitting from a kickback from its insurance servicer."  Am. Compl. ¶ 69.  However, in their opposition brief, and as confirmed during oral argument, Plaintiffs clarified that the assertion that the insurance premiums were "unusually round" was a "clerical error" remaining from an old draft of their complaint.  Opp. at 8 n.7.  Therefore, the Court disregards that allegation in its analysis.

procure force-placed insurance coverage under the circumstances and Defendant did not act arbitrarily or irrationally in exercising its discretion to procure the LPI policy.  Br. at 15-18; Reply at 2-4.  Defendant further contends that there is no contractual provision requiring, nor any other basis to require, Defendant to share the policy with Plaintiff.  *Id.*

## A.  Applicable Law

"Under New York law, a covenant of good faith and fair dealing is implicit in all contracts."  *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007); *accord Singh v. City of New York*, 217 N.E.3d 1, 5 (N.Y. 2023).  Included in this covenant is a pledge that "[n]either party to a contract shall do anything that has the effect of destroying or injuring the right of the other party to receive the fruits of the contract, or to violate the party's presumed intentions or reasonable expectations."  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018) (alteration adopted; quotation marks and citation omitted).  "Where the contract contemplates the exercise of discretion, [the duty of good faith and fair dealing] includes a promise not to act arbitrarily or irrationally in exercising that discretion."  *Cordero v. Transamerica Annuity Serv. Corp.*, 211 N.E.3d 663, 670 (N.Y. 2023) (citation omitted).  "[O]nly in a narrow range of cases" will the Court find a breach of the implied covenant, *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807, 817 (2d Cir. 2014), such as when a party "exercises its discretion malevolently, for its own gain as part of a purposeful scheme designed to deprive its counterparty of the benefits of a contract," *Najjar Grp., LLC v. W. 56th Hotel LLC*, 850 F. App'x 69, 72 (2d Cir. 2021) (summary order) (alteration adopted; quotation marks and citation omitted).  "Conduct which reaches the level of reckless disregard may be sufficient to evidence a breach of the implied covenant of good faith, but only if it is severe enough to warrant an inference that the party acted in bad faith, or

intended to do harm." *Lykins v. IMPCO Techs., Inc.*, No. 15-cv-02102 (PGG), 2018 WL
3231542, at *8 (S.D.N.Y. Mar. 6, 2018) (citation omitted).

"This covenant, however, does not include any term inconsistent with the terms of the
contractual relationship, or create duties which are not fairly inferable from the express terms
of that contract." *Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*, --- F. Supp.
3d ----, 2023 WL 8643799, at *15 (S.D.N.Y. Dec. 14, 2023) (quotation marks and citation
omitted), *appeal docketed*, No. 24-159 (2d Cir. Jan. 19, 2024); *accord Singh*, 217 N.E.3d at 5
("[T]he covenant cannot be used to imply obligations inconsistent with other terms of the
contractual relationship, and encompasses only those promises which a reasonable person in
the position of the promisee would be justified in understanding were included." (quotation
marks and citation omitted)); *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
976 F.3d 239, 248 (2d Cir. 2020) ("[U]nder New York law, the covenant of good faith and
fair dealing does not give rise to new, affirmative duties on contracting parties.").  "Nor can it
be construed so broadly as to effectively nullify other express terms of a contract, or to create
independent contractual rights." *Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp.
3d 263, 288 (S.D.N.Y. 2023) (quotation marks and citations omitted).

**B.  Analysis**

The parties agree that Defendant had discretion under Section 8.1.2 to force-place
insurance coverage on the Loan Agreement.  *See* Br. at 15; Opp. at 9; *see also* Section 8.1.2
(providing that if Plaintiffs "do[] not furnish" evidence of LPI coverage, Defendant "may, but
shall not be obligated to, procure such insurance").  Because "the contract contemplates the
exercise of discretion," the implied covenant imputes "a promise not to act arbitrarily or
irrationally in exercising that discretion."  *Cordero*, 211 N.E.3d at 670 (citation omitted); *see
also Lykins*, 2018 WL 3231542, at *8 ("Conduct which reaches the level of reckless disregard

may be sufficient to evidence a breach of the implied covenant of good faith, but only if it is severe enough to warrant an inference that the party acted in bad faith, or intended to do harm." (citation omitted)).

Here, Plaintiffs' argument that Defendant "abuse[d] [its] discretion in exercising its ability to force place coverage under the Loan Agreement" because it "removed [Plaintiffs'] ability . . . to receive the fruits of the Loan Agreement," Opp. at 10, does not suffice to support a claim for breach of the implied covenant.  Plaintiffs allege that the "added expense" of the insurance required under Section 8.1.2 "would have frustrated the purpose of the Loan Agreement" because it would have "eliminate[d] any profit margin on the Del Mar property, and thus no money would be available to pay down the loan itself."  Am. Compl. ¶ 18.  But the fact that insurance prices rose – "due to an unprecedented increase in the frequency and severity of natural disasters," as Plaintiffs themselves acknowledge in the Amended Complaint, *id.* ¶ 14 – and Defendant still required insurance on the property pursuant to Sections 8.1.1 and 8.1.2 does not support a claim that Defendant acted "arbitrarily or irrationally" or in bad faith, *Cordero*, 211 N.E.3d at 670 (citation omitted).  Even if the force-placed coverage had an adverse impact on the profitability of Plaintiffs' loan, the implied covenant does not prevent Defendant from acting in "its own self-interest consistent with its rights under [the] contact."  *Suthers v. Amgen, Inc.*, 441 F. Supp. 2d 478, 485 (S.D.N.Y. 2006); *see, e.g.*, *35 E. 75th St. Corp. v. Christian Louboutin L.L.C.*, No. 154883/2020, 2020 WL 7315470, at *2 (N.Y. Sup. Ct. Dec. 9, 2020) ("Of course, [the party seeking revocation of the contract] would not have entered into the lease if it knew there would be a [global COVID-19] pandemic that negatively affected the retail market.  But that is not sufficient to invoke the frustration of purpose doctrine."); *A/R Retail LLC v. Hugo Boss Retail, Inc.*, 149 N.Y.S.3d 808, 824 (Sup. Ct. 2021) (declining to excuse party's payment obligations under

contract despite acknowledging "the adverse economic effects of the pandemic"); *Gap Inc. v. Ponte Gadea N.Y. LLC*, 524 F. Supp. 3d 224, 236 (S.D.N.Y. 2021) (collecting cases to the same effect); *PPF Safeguard, LLC v. BCR Safeguard Holding, LLC*, 924 N.Y.S.2d 391, 394 (1st Dep't 2011) (payee unable to invoke frustration-of-purpose doctrine to excuse payment of self-storage contract in New Orleans following Hurricfane Katrina).  The Loan Agreement explicitly required Plaintiffs to carry such insurance and thereby allocated the risk that insurance premiums would increase to Plaintiffs.  Thus, the allegations that those rates increased and that Defendant still required insurance and procured it per its clear right under Section 8.1.2, without more, do not state a plausible claim that Defendant acted arbitrarily or irrationally.  *See Griffith-Fenton v. JPMorgan Chase/Chase Home Fin.*, No. 15-cv-04108 (VB), 2015 WL 10850340, at *8 (S.D.N.Y. 2015) (dismissing breach-of-contract and implied-covenant claims where the plaintiff alleged that the defendant "requir[ed] borrowers to pay for insurance coverage that exceeded the coverage necessary to protect the [defendant's] interest in the secured property" (original brackets omitted)); *LaCroix v. U.S. Bank, N.A.*, No. 11-cv-03236, 2012 WL 2357602, at *5 (D. Minn. June 20, 2012) (dismissing implied-covenant claim where plaintiff asserted that force-placed insurance coverage was excessive because "the Mortgage allowed insurance 'in the amounts and for the periods that [the defendant] requires'").[4]

---

[4] The Court is further unpersuaded by Plaintiffs' contention that Defendant force-placed the LPI policy in bad faith because the policy covers only Defendant as the named insured.  Opp. at 11.  The purpose of LPI coverage is to protect the lender's interest in the property, and Plaintiffs have not cited to any authority that requires Plaintiffs to be named as additional insureds.  *See, e.g.*, *Childress v. Liberty Mut. Fire Ins. Co.*, No. 10-cv-00059, 2011 WL 887975, at *2 (W.D. Wash. Mar. 11, 2011) (rejecting borrowers' argument that insurer that purchased LPI policy "should have named [borrowers] as additional insureds" as "untethered to any legal duty and unsupported by any authority"); *see also Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 259-60 (2d Cir. 2015) ("Lender-placed insurance, or LPI, can be more

Plaintiffs' next argument, that Defendant "refus[ed] to provide policy information," does not save this claim.  Opp. at 12 (emphasis omitted).  Plaintiffs cite no legal or contractual authority for the proposition that Defendant is required to provide the LPI policy to Plaintiffs, *see generally id.*, and the Court has not independently located such authority.  The Court is also not persuaded by Plaintiffs' new argument at oral argument that the reimbursement provision of Section 8.1.2 indicates that the LPI policy must be provided to Plaintiffs.  Section 8.1.2 does not create an obligation that the lender share all policy information with the borrower, but states only that the borrower is responsible for reimbursing the premiums for force-placed coverage, with interest, if the borrower does not obtain coverage in the required amounts.  *See* Section 8.1.2.

Plaintiffs have further provided no basis upon which to conclude that Defendant's failure to provide a copy of the LPI policy to the Plaintiffs constitutes bad faith.  Plaintiffs' conclusory allegation that Defendant's "unwavering refusal to identify the name of the carrier or any terms of the policy itself[] suggest[s] that [Defendant] *may* be benefitting from a kickback from its insurance servicer," Am. Compl. ¶ 69 (emphasis added), does not support a plausible claim for relief here.  This purely speculative allegation that only surmises that kickbacks "may" have occurred is insufficient especially given that Plaintiffs have now disavowed reliance on the only other factual allegations supporting their kickback theory.  Both at oral argument and in their opposition brief, Plaintiffs confirmed that the allegations in the Amended Complaint that the "unusually round nature of the insurance premiums" evidence that Defendant is receiving a kickback from its insurance carrier, *id.* ¶¶ 58, 69, 80, were mistakenly included in the Amended Complaint because of a "clerical error."  Opp. at 8

---

expensive than ordinary hazard insurance and does not necessarily cover the borrower's interest in the property.").

n.7.  "Factual allegations must be enough to raise a right to relief *above* the speculative level."
*Twombly*, 550 U.S. at 555.  On their face, Plaintiffs' bald allegations of kickbacks to
Defendant do not raise "more than a sheer possibility that the defendant has acted
unlawfully."  *Iqbal*, 556 U.S. at 678.[5]

Accepting as true Plaintiffs' factual allegations and drawing all reasonable inferences
in their favor, Plaintiffs have not pleaded sufficient facts to support a plausible claim that
Defendant acted arbitrarily, irrationally, or in bad faith in exercising its discretion to force-
place insurance coverage on the property pursuant to Section 8.1.2.  The claim for breach of
the implied covenant is therefore dismissed.

## II.  Breach of Fiduciary Duty

Plaintiffs also bring a claim for breach of fiduciary duty.  Am. Compl. ¶¶ 55-62.
Plaintiffs allege that "Defendant's ability to unilaterally choose the force placed premium for
Plaintiffs' property insurance gave the Defendant an unusual advantage and the Defendant
assumed full responsibility and control for these premiums outside the terms provided for in
the Loan Agreement without requesting any permission from Plaintiffs or explaining any
terms of the force placed coverage."  *Id.* ¶ 56.  Plaintiffs further allege that "[a]s an escrow
holder, Defendant breached its fiduciary duty to Plaintiffs . . . by knowingly paying out the

---

[5] Although the argument was not raised in their opposition brief as a basis for their claim for a
breach of the implied covenant, *see* Opp. at 8-13, the Amended Complaint also alleges that
Defendant's "dealings with other affected borrowers to waive aspects of their insurance
requirements" show that Defendant's decision to force-place coverage here was arbitrary and
an abuse of its discretion.  Am. Compl. ¶ 70.  Plaintiffs have cited no legal authority (nor has
the Court found any) to suggest that unspecified negotiations with other borrowers on
unidentified provisions of their policies form a basis for a claim that Defendant acted in bad
faith by exercising the clear entitlement to force-place coverage as set forth in Plaintiffs' Loan
Agreement.  Indeed, Plaintiffs "do[] not dispute that [Defendant] has a contractual right to
force place insurance and do[] not ask this Court to rewrite that provision in any way."  Opp.
at 9.

unreasonable and excessive force placed premiums from" the Tax and Insurance Subaccount.
*Id.* ¶¶ 59-60.

Defendant argues, among other things, that this claim should be dismissed because
"Plaintiffs have not plausibly alleged any special relationship between [Defendant] and
Plaintiffs," as required to state a claim for breach of fiduciary duty under New York law.  Br.
at 18-21.  In opposition, Plaintiffs assert that "several courts have found that breach of
fiduciary duty claims should survive a motion to dismiss in like circumstances where
plaintiffs have alleged that a lender has used escrow funds to pay for excessive force-placed
insurance coverage" and that there is a factual dispute as to whether the Tax and Insurance
Subaccount was an escrow account.  Opp. at 13-14.

### A.  Applicable Law

"The elements of a cause of action to recover damages for breach of fiduciary duty are
(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages
directly caused by the defendant's misconduct."  *Miller v. Wells Fargo Bank, N.A.*, 994 F.
Supp. 2d 542, 556 (S.D.N.Y. 2014) (quoting *Varveris v. Zacharakos*, 973 N.Y.S.2d 774, 775
(2d Dep't 2013)).

### B.  Analysis

As a threshold matter, Plaintiffs' claim that Defendant breached a fiduciary duty owed
to Plaintiffs by purchasing expensive force-placed coverage and not sharing the policy with
them is deficient for the same reasons as their breach of implied covenant of good faith and
fair dealing claim.  Plaintiffs admit that Defendant was entitled to purchase the coverage, Opp.
at 9, that Plaintiffs bear the risk of enhanced premiums resulting from force-placed coverage if
they let their coverage lapse, and that there is no obligation to provide Plaintiffs with

comprehensive policy information for that coverage, other than the premiums for which they are responsible.  *See supra* at Discussion § I.B.

In any event, the Court agrees with Defendant that Plaintiffs have not stated a plausible claim for breach of fiduciary duty because they have not pleaded sufficient facts to adequately allege the existence of a fiduciary relationship.  Absent "unusual circumstances," *Mfrs. Hanover Tr. Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993), the "legal relationship between a borrower and a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower," *Bank Leumi Tr. Co. of N.Y. v. Block 3102 Corp.*, 580 N.Y.S.2d 299, 301 (1st Dep't 1992); *accord Baumann v. Hanover Cmty. Bank*, 957 N.Y.S.2d 111, 114 (2d Dep't 2012).

The Loan Agreement further does not provide that the Tax and Insurance Subaccount is an escrow account.  This is in clear contrast to the Escrow Agreement (and related escrow account) entered into by the parties on June 22, 2022, which is separate and apart from the Tax and Insurance Subaccount.  ECF No. 29-4.  In any event, a "fiduciary relationship does not arise simply because the mortgagee makes payments from an escrow account on behalf of the mortgagor."  *Miller*, 994 F. Supp. 2d at 556 (quotation marks and citation omitted); *see also Griffith-Fenton v. Coldwell Banker Mortg.*, No. 13-cv-07449 (VB), 2014 WL 2217805, at *1, *5-7 (S.D.N.Y. May 2, 2014) (dismissing breach of fiduciary duty claim because there was no fiduciary relationship between a mortgagor and a borrower despite allegations that mortgagor purchased excessive lender-placed insurance and used funds from her escrow account to pay for that insurance); *see also Faez v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1110 (11th Cir. 2014) ("A lender's administration of . . . escrow funds" does not automatically "create[] a fiduciary relationship").

Plaintiffs cite two cases from outside of this District for the proposition that "several courts have found that breach of fiduciary duty claims should survive a motion to dismiss in like circumstances where plaintiffs have alleged that a lender has used escrow funds to pay for excessive force-placed insurance coverage." Opp. at 13-14 (citing *Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255 (N.D.N.Y. 2013); and *Dolan v. Select Portfolio Servicing*, No. 03-cv-03285 (PKC), 2016 WL 3512196 (E.D.N.Y. June 22, 2016)). Both cases are distinguishable from the case at hand. In *Casey*, the court premised its holding on the fact that there were "specific provisions" in the relevant agreement that required the defendants to hold specific funds "in escrow." 915 F. Supp. 2d at 265. Similarly, in *Dolan*, the court premised its holding on the fact that the mortgage required the defendant "to make specified payments . . . from the escrow funds." 2016 WL 3512196, at *6-7. As described previously, there is no such provision in the Loan Agreement. Further, in both *Casey* and *Dolan*, the courts held that the respective plaintiffs had plausibly alleged that the defendants received kickbacks from the forced-placed insurance. *See Casey*, 915 F. Supp. 2d at 264; *Dolan*, 2016 WL 3512196, at *7 n.16. In contrast, as the Court has already explained, Plaintiffs have not plausibly alleged here that Defendant received a kickback from its LPI servicer. *See supra* Discussion § I.B.

Accordingly, Plaintiffs' claim for breach of fiduciary duty is dismissed.

## III.   Breach of Contract

Plaintiffs next bring a claim for breach of contract, alleging that "Defendant breached the Loan Agreement by using Escrow Funds in a manner that is not authorized under the Loan Agreement" because Defendant pulled funds from the Tax and Insurance Subaccount to pay the premium on the LPI policy. Am. Compl. ¶¶ 75-82. Plaintiffs assert that, under Section 8.1.2, Defendant should have instead paid the premium itself, and then sought reimbursement from Plaintiffs. *Id.*

Defendant argues that there was no breach of the Loan Agreement because, pursuant to Section 4.3, "to the extent there are available funds in the Tax and Insurance Subaccount, [Defendant] also has the option to apply those funds to . . . '[make] payments of Taxes and Insurance Premiums required to be made by [Plaintiffs] pursuant to . . . Section 8.1,' which includes the provision regarding lender-placed coverage."  Br. at 21-22 (first and third alterations added) (quoting Loan Agreement § 4.3).  Defendant also argues that Plaintiffs have not stated a claim because Plaintiffs are unable to allege damages, given that Plaintiffs were relieved of paying the interest that would have accrued had Defendant paid the premium itself and sought reimbursement from Plaintiffs.  *See id.* at 22.

### A.  Applicable Law

There are four elements for a claim of breach of contract under New York law.  Those elements are: "[1] the existence of a contract, [2] the plaintiff's performance thereunder, [3] the defendant's breach thereof, and [4] resulting damages."  *Russo v. Estee Lauder Corp.*, 856 F. Supp. 2d 437, 460 (E.D.N.Y. 2012) (quoting *Harris v. Seward Park Hous. Corp.*, 913 N.Y.S.2d 161, 162 (1st Dep't 2010)); *accord 34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022); *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 409 (2d Cir. 2023); *VW Credit, Inc. v. Big Apple Volkswagen, LLC*, No. 11-cv-01950 (PAE), 2012 WL 919386, at *3 (S.D.N.Y. Mar. 15, 2012).  "The general rule for measuring damages for breach of contract . . . is the amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract."  *Adams v. Lindblad Travel, Inc.*, 730 F.2d 89, 92 (2d Cir. 1984); *accord Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs., P.C.*, 692 N.E.2d 551, 552 (N.Y. 1998); *iGo Mktg. & Ent., LLC v. Hartbeat Prods., LLC*, 191 N.Y.S.3d 646, 648 (2d Dep't 2023); *Wai Ming Ng v. Tow*, 688 N.Y.S.2d 647, 649 (2d Dep't 1999).

**B.  Analysis**

Plaintiffs' claim for breach of contract must be dismissed because Plaintiffs have not adequately alleged that they suffered any damages.  Plaintiffs do not assert that they are not responsible for the premiums for force-placed coverage.  Opp. at 9.  Under Plaintiffs' interpretation of the Loan Agreement, however, Defendant should have paid the LPI premiums and then requested reimbursement from Plaintiffs for those premium payments "with interest accruing at the Default Rate."  Section 8.1.2.  This process necessarily would have left Plaintiffs in the same or a worse financial position, because in addition to the LPI premium, Plaintiffs would have been responsible for interest accruing at the contractual default rate.

Plaintiffs respond that they have adequately alleged damages because "[Defendant] used Plaintiff[s'] escrow funds to pay for the force-placed premiums – once [Defendant] took those funds from the Tax/Insurance Subaccount, they were gone.  If reimbursement had been sought under the contract's provisions, [Plaintiffs] would have had the right to choose how to pay, from what account, or whether to pay at all and instead dispute the fees through litigation."  Opp. at 15 (citation omitted).  Plaintiffs assert that therefore, their damages are "the amounts deducted from the escrow account."  *Id.*  But the proper calculation of damages is "the amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract," *Adams*, 730 F.2d at 92, and had Defendant acted in the way Plaintiffs assert it should have, Plaintiffs would have been in the same position (if no interest was assessed) or a worse financial position.  *See Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 261 (S.D.N.Y. 2005) ("Damages for a breach of contract are normally limited to the amount necessary to put the plaintiff in the same economic position plaintiff would have occupied had the breaching party performed the contract" and

may not "put the non-breaching party in a *better* financial position than they would have occupied but for the breach."); *see also id.* at 261-62 ("The central objective behind the system of contract remedies is [to be] compensatory." (citation omitted)).  Plaintiffs do not plead, nor did they contend during oral argument, that they were unable to pay their tax obligations because the monies were withdrawn from the insurance portion of the subaccount, or that they were otherwise harmed by Defendant's withdrawal of the LPI insurance premiums from the Tax and Insurance Subaccount.  *See generally* Am. Compl.  Further, Plaintiffs' claim that they were harmed because they were unable to contest the LPI policy premiums – which the Court has already found they were obligated to pay – rings hollow.  *Cf. Circeo-Loudon v. Green Tree Servicing, LLC*, No. 14-cv-21384, 2014 WL 4219587, at *3 (S.D. Fla. Aug. 25, 2014) ("Losing an opportunity to breach a contract cannot constitute a cognizable fraud harm.").

Plaintiffs have therefore not adequately alleged damages, and their claim for breach of contract thus fails.  *See 34-06 73, LLC*, 198 N.E.3d at 1287 ("[T]o plead a cause of action for breach of contract, a plaintiff usually must allege that . . . [the] defendant's breach resulted in damages.").  This claim is dismissed.

## IV.  Declaratory Judgment

Finally, Plaintiffs bring a claim for declaratory judgment.  Am. Compl. ¶¶ 52-54. Specifically, Plaintiffs seek a declaration that:

> (a) Plaintiffs have no obligation to pay for the force placed premium for the unreasonable property insurance unilaterally purchased by [Defendant] in an abuse of its discretion under the Loan Agreement;
>
> (b) [Defendant] has acted in a commercially unreasonable manner and in violation of the implied covenant of good faith and fair dealing;

       (c) In light of the uncontrollable and unforeseen changes in the insurance market, it would be impracticable to allow [Defendant] to force place coverage at unreasonable premium levels; [and]

       (d) In light of the uncontrollable and unforeseen changes in the insurance market, it would be impracticable to require Plaintiffs to obtain property insurance up to the total replacement value.

*Id.* ¶ 54.

       Defendant argues that this claim should be dismissed in its entirety because it is duplicative of Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. *See* Br. at 23-25; Reply at 9-10.

    **A.  Applicable Law**

       Whether to grant declaratory relief falls within the Court's "broad discretion," *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99 (2d Cir. 2023) (citation omitted), "which turns on the following considerations: '(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty,'" *Optanix, Inc. v. Alorica Inc.*, No. 20-cv-09660 (GHW), 2021 WL 2810060, at *3 (S.D.N.Y. July 6, 2021) (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005)).  When a plaintiff's contract claim "will necessarily settle the issues for which the declaratory judgment is sought," a declaratory-judgment claim "will serve no useful purpose and will not serve to offer relief from uncertainty." *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 100 (S.D.N.Y. 2018) (quotation marks and citation omitted). Therefore, courts in this District regularly exercise their discretion to dismiss declaratory-judgment claims when they are duplicative of other claims in the suit.  *See, e.g.*, *id.* (dismissing declaratory-judgment claim as duplicative of breach-of-contract claim); *City of*

*Perry v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016) (dismissing declaratory-judgment claim as duplicative of state-law claims); *Intell. Cap. Partner v. Institutional Credit Partners LLC*, No. 08-cv-10580 (DC), 2009 WL 1974392, at *6 (S.D.N.Y. July 8, 2009) (dismissing declaratory-judgment claim where "declaratory relief would serve no useful purpose as the legal issues will be resolved by litigation of the breach of contract claim").

### B. Analysis

As a threshold matter, Plaintiffs agree that the first two points of their declaratory-judgment claim – that is, Paragraphs 54(a) and 54(b) – are duplicative of their claim for breach of the implied covenant.  *See* Opp. at 16.  Thus, the legal issues involved with respect to those points are fully clarified by the Court's analysis (and dismissal) of Plaintiffs' claim for breach of the implied covenant, so the corresponding declaratory-judgment claim clearly serves no useful purpose.

However, Plaintiffs assert that the second two points of their declaratory-judgment claim – regarding the impracticability of the force-placed coverage – are not duplicative of their implied-covenant claim.  *See* Opp. at 16.  Plaintiffs argue that these points "seek[] relief that is distinct from [Plaintiffs'] claim for breach of the implied covenant of good faith," *id.*, and will "serve a useful purpose in clarifying the parties' obligations under the Loan Agreement on a going forward basis," *id.* at 17.  The Court does not agree.

The legal issues raised by Plaintiffs' declaratory-judgment claim as contained in Paragraphs 54(c) and 54(d) are resolved by the Court's analysis of the implied-covenant claim.  In support of the implied-covenant claim, Plaintiffs allege that "Defendant's actions related to the unreasonable force placed premium amount to a material breach of the implied covenant of good faith and fair dealing with respect to the Loan Agreement."  Am. Compl.

¶ 72.  Because the Court has already held that Plaintiffs have not sufficiently alleged a breach of the implied covenant, there is no need for the Court to declare whether "[i]n light of the uncontrollable and unforeseen changes in the insurance market, it would be impracticable to allow [Defendant] to force place coverage at unreasonable premium levels; [and to . . .] require Plaintiffs to obtain property insurance up to the total replacement value." *Id.* ¶ 54(c)-(d).  Further, to the extent that Plaintiffs argue that these declarations "serve a useful purpose in clarifying the parties' obligations under the Loan Agreement on a going forward basis," Opp. at 17, the Court declines Plaintiffs' invitation to issue an advisory opinion, *see Mars Advert. Europe Ltd. v. Young & Rubicam, Inc.*, No. 13-cv-00401 (CM), 2013 WL 1790896, at *11 (S.D.N.Y. Apr. 24, 2013) (dismissing claim for declaratory judgment that plaintiff argued would "clarify[] . . . future obligations" because the claim "not only does not serve any useful purpose, [but also] it smacks of offering an advisory opinion").  "The Court is not going to rewrite the parties' contract; it will enforce their contract in accordance with its terms." *Id.*

In sum, Plaintiffs' claim for declaratory judgment is dismissed.

## V.    Dismissal With Prejudice Is Warranted

Rule 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires."  Nonetheless, "it is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).  "[A] district court may properly deny leave when amendment would be futile." *Jones v. N.Y. State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 50 (2d Cir. 1999).

Here, Plaintiffs have already amended their complaint once, after Defendant filed its first motion to dismiss.  ECF No. 20; Am. Compl.  Plaintiffs argue that further amendment would not be futile because "[o]n an almost weekly basis, new information suggests

22

inconsistencies with [Defendant's] representations about the [LPI] policy." Opp. at 18. Thus,

Plaintiffs argue, leave to amend should be granted so they can add new factual allegations that

support its claims for relief. *Id.* Specifically, Plaintiffs assert that they would amend the

Amended Complaint to add that:

- Two days before filing their amended motion to dismiss, [Defendant] notified [Plaintiff] that the premium for the force placed coverage would be dropping from approximately $193,000 to approximately $50,000. This is evidence of the arbitrary and excessive amount previously charged.

- It was later confirmed that premium amount was approximately only $43,000 – over 75% less than what [Defendant] was charging [Plaintiff] before this lawsuit was filed.

- [Defendant] provided a "loss run letter" – from a broker, not an insurer – that continues to hide the identity of the carrier and the scope of the purported policy, which would identify exactly how much insurance [Defendant] had purchased for ~$193,000, and whether it is the same as what they're now purchasing for ~$43,000.

*Id.* Starting with the latter allegation, Plaintiffs' acknowledgment that Defendant has now

provided a loss run letter, as requested by Plaintiffs, does not alter the viability of Plaintiffs'

claims even if the loss run letter does not contain the name of the insurance carrier. The

Court has already rejected Plaintiffs' claim based on Defendant's failure to provide the

underlying LPI policy. The Court finds that it would be similarly futile for Plaintiffs to amend

their complaint for a second time to plead that the premiums have decreased. Plaintiffs' bald

assertion that *decreasing* premiums after the 2023 hurricane season (during which Plaintiffs'

themselves acknowledged premiums were "dramatically increased" due to natural disasters,

Am. Compl. ¶ 14) would consist of nothing more than speculation that Defendant was acting

in bad faith. Thus, the Court finds that further amendment would be futile.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  The

Amended Complaint is dismissed with prejudice.  The Clerk of Court is respectfully directed

to terminate the motion at ECF No. 28 and CLOSE the case.

Dated: May 16, 2024
      New York, New York

                        SO ORDERED.

                        JENNIFER L. ROCHON
                        United States District Judge